688 A.2d 515

**BOARD OF COUNTY COMMISSIONERS OF ST. MARY'S COUNTY, et al.**

v.

**POTOMAC RIVER ASSOCIATION OF ST. MARY'S COUNTY, INC., et al.**

No. 722, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Feb. 4, 1997.

Douglas S. Durkin, County Attorney, Leonardtown, for appellants.

Douglas Clark Hollmann, Annapolis, for appellees.

Argued before WENNER, HARRELL and EYLER, JJ.

EYLER, Judge.

The primary issue presented by this case is whether a St. Mary's County ordinance amending the County's subdivision regulations and zoning ordinance conflicts with State law or is otherwise invalid. We hold that the Ordinance does conflict with State law, and thus, is invalid. Consequently, we affirm that portion of the judgment that declares the statute to be invalid. For reasons stated below, however, we vacate the portion of the judgment that issues a writ of mandamus.

## Procedural History

In December 1991, a complaint was filed by Potomac River Association of St. Mary's County, Inc. (PRA), appellee, against the Board of County Commissioners of St. Mary's County (County Commissioners), and John R. Grimm, Director of Planning & Zoning for St. Mary's County (Mr. Grimm), appellants, and Evelyn W. Wood, Clerk of the Circuit Court for St. Mary's County. Evelyn W. Wood was dismissed as a defen-

dant, and, in March 1993, an amended complaint was filed by PRA and Mary L. Jansson (Ms. Jansson), another appellee, against appellants. Appellees sought a declaratory judgment, mandamus, and injunctive relief.

With respect to standing, appellees alleged that (1) PRA operates primarily to contribute to the general understanding and welfare of the Chesapeake Bay, its tributaries and watersheds, and (2) Ms. Jansson is a landowner in St. Mary's County who has expended considerable sums of money to comply with County regulations governing the subdivision of land, and that she has been forced to pay fees and expenses that other persons who have subdivided land in the County were not required to pay. Ms. Jansson alleged that she has paid higher taxes because citizens who should have paid fees and costs based on the subdivision of their land did not do so and, additionally, that the environment has been adversely affected by the illegal subdivisions.

Appellees requested a declaratory judgment that St. Mary's County Ordinance No. Z–91–07, effective August 13, 1991 ("the Ordinance"), is void because it violates Art. 66B of the Md. Ann.Code. Appellees alleged that Art. 66B provides that, once a County adopts a comprehensive plan and subdivision regulations, no land can be subdivided without complying with such regulations. Subdivision regulations were adopted by St. Mary's County on March 15, 1978. According to appellees, thousands of parcels were subdivided illegally[1] after adoption of the regulations, and the difficulty in enforcement prompted the County to adopt the Ordinance. The Ordinance moved the "parcel of record" date in the subdivision regulations and zoning ordinance from March 15, 1978 to August 1, 1990 for

---

**1.** Appellants state that a survey of a sample year discloses 2,500 to 3,000 instances of "non-compliance" with the subdivision regulations in that year. Although the record contains very little information upon which we can verify the parties' various allegations, it does disclose that the instances of "noncompliance" or "illegality" were those instances where parcels were partitioned by deed. Such partitioning is prohibited by the County's Subdivision Regulations. § 1.04.B. Any land partitioned in this manner cannot be developed. *Id.*

lands located outside of the Chesapeake Bay Critical Area and to December 1, 1985 for lands located within the Chesapeake Bay Critical Area. Appellees argue that the effect of the Ordinance was to change the effective date of the regulations retroactively, a move prohibited by Art. 66B.

In addition to the request for declaratory relief, appellees requested an injunction prohibiting the County Commissioners from enacting legislation to alter or change the "parcel of record" date or any other legislation intended to exempt property from the operation of the subdivision laws contained in Art. 66B. Finally, appellees requested a writ of mandamus ordering appellants to enforce Art. 66B, the County zoning ordinance and subdivision regulations, and requested an injunction to prohibit Mr. Grimm from issuing building permits and any other permits for the development of land that has been subdivided in violation of Art. 66B, the County zoning ordinance, or subdivision regulations.

The parties filed cross-motions for summary judgment, each contending that no dispute of material fact existed. In an opinion and order filed on August 31, 1994, the trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. Appellants filed a motion to alter or amend the judgment, which was denied, and this appeal ensued.

### Facts

In 1945, St. Mary's County adopted subdivision regulations. In 1974, the County adopted its first comprehensive plan, including a transportation element, and also adopted its first zoning ordinance. The subdivision regulations were revised on several occasions, including revisions in 1954, 1974, a revision effective March 15, 1978,[2] 1987, and 1991. According to appellants, none of the revisions through 1987 included "standard or customary" exemptions commonly found in mod-

---

**2.** The amendment that took effect on March 15, 1978 was a comprehensive redrafting of the subdivision regulations following the adoption of the County's first comprehensive plan.

ern subdivision regulations, *e.g.*, large lot subdivisions, boundary line adjustments, easements, rights-of-way, cemetery lots, and court-ordered partitions. The result, according to appellants, was that the regulations proved to be unduly onerous in many situations. The zoning ordinance was revised on several occasions, including June 7, 1978, August 1, 1990, June 24, 1991, and November 28, 1994.

In February 1987, the County amended its subdivision regulations to add § 4.09(c) to provide for certain limited exceptions,[3] to change the definition for "minor" subdivisions [4]

3. Section 4.09(C) provides that, "[i]n certain instances, parcels may be created without making provisions for water supply or sewage disposal." The instances are "i. to settle estate or other court ordered partitions; ii. to add land to an existing parcel; iii. to transfer land for purposes other than development; [and] iv. to transfer land to children for development in the future." Section 4.09(c) further provides, however, that "[i]n all cases when [such a parcel] ... is developed, a Standard Subdivision plat must be recorded prior to issuance of building permit."

4. Prior to the 1987 amendment, "subdivision-minor" was defined as a "subdivision of land resulting in eight (8) lots or less not involving construction of new public roads and limited to one such subdivision per parcel of record." Pursuant to the 1987 amendment, the following definitions were added:

SUBDIVISION, BASIC—The division of a parcel of record such that no more than 3 buildable lots are created which do not have public road frontage or private right-of-way which is recorded in the land records as of the effective date of August 1, 1986. Basic subdivision lots may be served by a 20 ft. right-of-way, but no more than 3 lots shall be served by any 20 ft. right-of-way. A road maintenance agreement is required prior to recording any lots.
SUBDIVISION, MAJOR—Is any subdivision not defined as a Minor Subdivision.
SUBDIVISION, MINOR—The division of a parcel of record which creates 4 to 8 lots which do not have frontage on a public road, or private right-of-way which is recorded in the land records as of August 1, 1987. Minor subdivision lots shall be served by a road designed and built to the modified R–1 standard. A road maintenance agreement is required prior to recording any lots. The road must be constructed or bonded prior to the issuance of any building permits.
SUBDIVISION, FARMSTEAD—A Minor Subdivision in which all lots are 15 acres or larger. Farmstead subdivisions require a 40 ft. right-of-way but are not subject to road design standards.

and to add a definition for "parcel of record."[5] The 1987 amendment did not include the standard and customary exemptions to which appellants refer. The August 1, 1990 zoning ordinance and the subdivision regulations after the 1987 amendment contained in essence the same definitions for the types of subdivision and the same definition for the term "parcel of record."

Prior to 1990, County officials failed effectively to enforce the subdivision regulations. For the period from 1978 through 1990, it is estimated that "15–20% of all permit applications" were not in compliance. According to appellants, many of the activities would have been exempt if "standard and customary" exemptions had been enacted. We note, however, that the record does not contain any evidence to support that statement.

The County employed Mr. Grimm as planning director in 1990. Mr. Grimm began strictly to enforce the subdivision regulations by denying building permits to those in violation of the regulations. As a result of the burden on County officials, the substance of what became the Ordinance was recommended by the County Planning Commission and ultimately was enacted by the County Commissioners on August 13, 1991. The stated purpose of the Ordinance was to amend the zoning ordinance and subdivision regulations to revise the "parcel of record" definition and date from March 15, 1978 to

---

5.  Before and after the 1987 amendment, "lot of record" was defined as [a]n individual parcel of land recorded separately in the Official Land Records of St. Mary's County, as of the date of the adoption of these regulations entitled and limited to one (1) minor subdivision each. Pursuant to the 1987 amendment, a definition was added for "parcel of record" as follows:
      An individual parcel of land recorded separately in the Official Land Records of St. Mary's County, Maryland, as of March 15, 1978. Each so designated parcel of record shall be allowed up to 8 lots in a Basic or Minor Subdivision. Only County or State Road rights-of-way which existed on March 15, 1978 shall be considered parcel dividers which divide a parcel into 2 or more parcels of record.
   The apparent purpose of the addition of the "parcel of record" definition was to make the effective date of the 1987 amendment March 15, 1978.

August 1, 1990 "to recognize otherwise legal parcels trans-
ferred by deed after March 15, 1978 but not legally subdivid-
ed," and to define "lot of record" as "a parcel of land legally
subdivided and recorded in the Land Records of St. Mary's
County, Maryland."

Citing §§ 5.02 and 5.03 of Art. 66B, the trial court stated
that, once the County adopted a comprehensive plan and the
subdivision regulations became effective, the effective date of
the subdivision regulations was not subject to change.[6] The
trial court treated the Ordinance as a change in the effective
date of the regulations and, thus, held it invalid. The trial
court found that the regulations were adopted by the County,
effective March 15, 1978, and that became the effective parcel
of record date.[7]

The trial court denied appellees' request for an injunction
prohibiting the County Commissioners from enacting future
legislation, based on a finding that there was no reason to
anticipate that the County Commissioners would do so. The
trial court did enjoin, however, the issuance of building and
other permits for the development of land subdivided without
Planning Commission approval after March 15, 1978. The
trial court also issued a writ of mandamus directing appellants
to take "appropriate action" to enforce the court's decision,
including the filing of actions in circuit court to enjoin the
transfer or sale of subdivisions that have not been approved
by the Planning Commission and to recover the penalties

---

6. Pursuant to Art. 66B, § 5.02, once a county adopts subdivision
regulations and sets a date when the regulations become effective, all
subdivision plats shall be approved by the local planning commission
before they can be recorded. Art. 66B, § 5.03 states that, "before
exercising the powers referred to in Section 5.02, the Planning Com-
mission shall prepare regulations governing the subdivision of land
within its jurisdiction."

7. Appellees argued below that April 25, 1974 should be the effective
date because the comprehensive land use plan was filed on that date.
Appellees do not pursue that argument on appeal, and it is not before
us.

authorized by Art. 66B, § 5.05 [8] from the entities violating the statute.

## Questions

The parties each present several questions, but they all are subsumed in the following two questions, as stated by us.

    1.  Did the circuit court err in declaring the Ordinance invalid?

    2.  Did the circuit court err in issuing a writ of mandamus?

## Discussion

## I.

## Validity of Ordinance

The first and central issue on appeal is whether the enactment of the Ordinance exceeds those powers conferred upon the County by the State's enabling legislation, Art. 66B (originally enacted in 1933). *See Urbana Civic Assoc. v. Urbana Mobile Village, Inc.*, 260 Md. 458, 461–62, 272 A.2d 628 (1971). Accordingly, a review of such legislation informs our analysis of this case.

Article 66B, commonly known as the "enabling act", *Congressional School of Aeronautics, Inc. v. State Roads Comm'n*, 218 Md. 236, 244, 146 A.2d 558 (1958); 58 Op. Att'y Gen'l 521, 522 (1973), is divided into sections dealing with planning (§§ 3.01 through 3.09), zoning (§§ 4.01 through 4.09), and subdivision control (§§ 5.01 through 5.07). More specifically, §§ 3.01 through 3.09 authorize a county [9] to, among

---

**8.**  Art. 66B, § 5.05 provides in pertinent part for the imposition of civil penalties upon any owner of land located within a subdivision who attempts to transfer such land "by reference to or exhibition of or by other use of a plat of a subdivision, before the plat has been approved by the planning commission and recorded or filed in the office of the appropriate county clerk."

**9.**  Art. 66B governs only nonchartered counties and municipalities. Art. 66B, § 7.03. Provisions governing chartered counties are located in Art. 25A, § 5(X).

other things, make, adopt, extend, or amend a comprehensive development plan, and create a planning commission. § 3.01(a). Further, § 3.05(a) provides that "[i]t shall be the function *and duty* of the [planning] commission to make and approve" a comprehensive development plan. (Emphasis added.) As previously noted by the Court of Appeals,

> "This section is designed to assert the full force of the plan as being the foundation upon which zoning, subdivision, and other land use regulatory devices shall be constructed. The various elements of the plan are set out clearly, thus providing an understanding of the contents of the plan. By requiring these various elements to be interrelated, the plan develops the comprehensiveness necessary to establish land use regulatory devices."

*Board of County Commissioners of Cecil County v. Gaster,* 285 Md. 233, 241, 401 A.2d 666 (1979) (quoting Maryland Planning and Zoning Law Study Commission, *Final Report* 18, 25 (1969)).

Section 3.06(a) provides in pertinent part that

> [t]he plan shall be made with the general purpose of guiding and accomplishing the coordinated, adjusted, and harmonious development of the jurisdiction, and its environs which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity, and general welfare, as well as efficiency and economy in the process of development; including among other things, adequate provisions for traffic, the promotion of public safety, adequate provision for light and air, conservation of natural resources, the prevention of environmental pollution, the promotion of the healthful and convenient distribution of population, the promotion of good civic design and arrangement, wise and efficient expenditure of public funds, and the adequate provision of public utilities and other public requirements.

Section 3.08 provides that, whenever a plan has been adopted by the local legislature,

no street, square, park or other public way, ground, or open space, or public building or structure, or public utility, whether public or privately owned, shall be constructed or authorized in the jurisdiction ... until the location, character, and extent of such development shall have been submitted to and approved by the commission as consistent with the plan. . . .

Subtitle 4, which is entitled "General Development Regulations and Zoning," begins with § 4.01(a) which grants to local legislative bodies of counties the power to regulate development

[f]or the purpose of promoting health, safety, morals or the general welfare of the community. . . .

Section 4.03 provides that

[s]uch regulations shall be made in accordance with the plan and designed to control congestion in the streets; to secure the public safety; to promote health and the general welfare; to provide adequate light and air; to promote the conservation of natural resources; to prevent environmental pollution[;] to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, recreation, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its suitability for particular uses, and with a view to conserving the value of buildings and encouraging the orderly development and the most appropriate use of land throughout the jurisdiction.

Pursuant to § 5.02,

[w]henever a local legislative body shall have adopted the transportation element of the plan of the territory within its subdivision jurisdiction or part thereof, and shall have filed a certified copy of such plan in the office of clerk of the circuit court of the county in which such territory or part is located:

(1) A plat of a subdivision of land within such territory or part may not be filed or recorded until it shall have been

approved by the planning commission and such approval entered in writing on the plat by the chairman or secretary of the commission; and

(2) If a plat of a subdivision of land within the territory or part contains 5 or less lots, sites, or other divisions of land, the planning commission may authorize the chairman of the planning commission, the zoning administrator, or an equivalent administrative official to approve the plat of the subdivision. The approval shall be entered in writing on the plat.

Pursuant to § 5.04,

... Every plat approved by the commission shall by virtue of such approval, be deemed to be an amendment of or an addition to or a detail of the plan and a part thereof....

The foregoing statutory scheme envisions a strong interrelationship between the three integral parts of land planning: planning, zoning, and subdivision control. *See Gaster*, 285 Md. at 246, 401 A.2d 666 (noting that the three integral parts of adequate land planning are the master plan, zoning, and subdivision regulation). As the Court of Appeals noted in *Gaster*, the reasons for subdivision control are as follows:

"Planning enabling acts and the requirements for plat approval are based upon the realization that homes are no longer generally constructed one at a time for individual owners, resulting in a gradual development which can be controlled by zoning ordinances and local health, building, plumbing and electrical codes alone. Vacant lots suitable for single homes in already developed communities have all but disappeared. The great increases in population and the unprecedented demand for homes has necessarily resulted in opening up undeveloped land in outlying areas, and the development thereof by large numbers of homes which may be said to be built all at one time. Where such development takes place without restriction other than zoning restrictions, it is the developer who designs the community in respect to the number, length, width, condition, and location of streets. The developer also determines where the newly arrived inhabitants of the community shall reside, without

consideration of the necessity for, or existence of, schools, fire protection, parks, playgrounds, and other public facilities. If subdivisions develop too rapidly, or before the community is ready for the added burdens which an increased population imposes, and without adequate control, the result too often is the creation of deteriorating neighborhoods which create a blight upon the community and a drain upon the municipal purse."

285 Md. at 246–47, 401 A.2d 666 (quoting A. Rathkopf, *The Law of Zoning and Planning* Ch. 71, § 2, at 71.6–7 (4th ed.1979)). *See also Hickory Point Partnership v. Anne Arundel County*, 316 Md. 118, 129, 557 A.2d 626 (1989); *Maryland–National Capital Park & Planning v. Washington Business Park Associates*, 294 Md. 302, 312–13, 449 A.2d 414 (1982); *Coffey v. Maryland–National Capital Park & Planning Comm'n*, 293 Md. 24, 28, 441 A.2d 1041 (1982); *Baltimore v. Wesley Chapel*, 110 Md.App. 585, 603–05, 678 A.2d 100, *cert. granted*, 344 Md. 52, 684 A.2d 1327 (1996).

As appellants note, Art. 66B does not *require* that counties regulate subdivision development. *See* §§ 5.01 through 5.08. Neither does Art. 66B mandate the particular content of subdivision regulations ultimately adopted by the counties. § 5.03(a); 58 Op. Att'y Gen. at 522–23. *See also* Tierney, *Maryland's Growing Pains: The Need for State Regulation*, 16 U. Balt. L.Rev. 201, 211 (1987) (noting that Maryland delegates more control to local governments than do many other states). There are *some limits,* however, on a local jurisdiction's ability to regulate subdivisions. In particular, Art. 66B, § 5.03(a), provides that, before a local jurisdiction may regulate subdivisions, it must promulgate subdivision regulations:

Before exercising the powers referred to in § 5.02, the planning commission shall prepare regulations governing the subdivision of land within its jurisdiction. . . .

*See also* 58 Op. Att'y Gen. at 522. The statutory scheme expressly envisions that the local jurisdictions will control subdivision development only within the confines of a regulato-

ry scheme. Stated somewhat differently, Art. 66B does not empower a local jurisdiction to regulate subdivisions solely on an *ad hoc* basis. We agree with the trial court that the effect of the Ordinance is to postpone the effective date of the subdivision regulations, and we hold that such postponement exceeds the County's authority under Art. 66B, §§ 5.01, *et seq.*

Appellants concede that, between 1978 and 1990, the subdivision regulations were not strictly enforced and that "some local lawyers and surveyors frequently disregarded the subdivision laws." More specifically, appellants state that during this time period "there were a great multitude of instances of non-compliance with the [s]ubdivision [r]egulations, estimated at '15—20 percent of all permit applications.'"[10] The record reveals more particularly that the instances of noncompliance were instances in which land was subdivided by deed rather than by an approved plat. The record further suggests that many owners of such parcels of land were granted building permits in contravention of the subdivision regulations. The result is that such parcels were exempted from the subdivision regulations then in effect. In an effort to "clean the slate," the planning commission proposed, and the County Commissioners ultimately adopted, legislation that postponed the effective date of the regulations, thereby retroactively repealing the regulations for the time period between 1978 and 1990.

There is no information in the record reflecting the specific nature and extent of noncompliance with the subdivision regulations. If the parties' general estimates as to the extent of noncompliance is correct, the vast majority of land that was subdivided between 1978 and 1990 was subdivided in accordance with the regulations. The effect of a retroactive repeal would be to validate all non-complying parcels without knowledge of the nature of each such subdivision and how it fits into the regulatory scheme and, thus, without consideration of any

---

**10.** Appellants further state that "[a] survey of a sample year (1985) ... discloses 2,500 to 3,000 instances of noncompliance...." The survey, however, is not a part of this record as it was completed after entry of the trial court's order. *See* footnote 1.

criteria for determining why they should be exempt. Such action clearly exceeds the scope of authority granted to the County by Art. 66B.

The record reveals that the Ordinance was enacted for the sole purpose of easing the administrative burden of enforcing the subdivision regulations. No findings were made that the Ordinance would promote the health, safety, morals, or general welfare of the community or that the Ordinance would conform with the County's comprehensive plan or the goals expressed therein. Indeed, the Ordinance was not enacted with any consideration of the issues that normally informs land use legislation or with any consideration of the County's comprehensive plan.

Appellants argue that the Ordinance is a lawful curative act that it had power to enact under Art. 66B and Public Local Laws for St. Mary's County, § 127–1 enacted in 1976.[11] Appellants argue that, pursuant to those enabling laws, the County had authority to exempt from its subdivision regulations subdivisions containing only a small number of lots. They argue further that the effect of the Ordinance was to

---

**11.** Section 127–1:

Authorization; regulations.

A. The Board of County Commissioners may prepare regulations and amendments to them governing the subdivision of land within the county.

B. The regulations may provide for:

(1) The harmonious development of the district.

(2) The coordination of roads within the subdivision with other existing planned or platted roads or with other features of the county or with the Commission's general plan.

(3) Adequate open spaces for traffic, recreation, light and air, by dedication or otherwise, and the dedication to public use or conveyance of areas designated for dedication under the provisions of zoning regulations relating to average lot size or planned community subdivisions and for the payment of a monetary fee, in lieu of dedication, to enable the Commission to purchase, develop or maintain park sites for the use and benefit of the subdivisions in cases where dedication would be impractical. The Commissioners shall establish the monetary fee by resolution on a per-unit or per-lot basis.

provide such an exemption and, thus, they were entitled to summary judgment.

More specifically, appellants argue that the amendment of the "parcel of record" definition and date affected only the definitions of "basic" subdivisions and "minor" subdivisions, consisting of eight or fewer lots, that were created without an approved plat prior to the effective date of the Ordinance. Relying on an Attorney General opinion, 58 Md. Op. Att'y Gen. 521 (1973), appellants argue that local jurisdictions may vary the definition of Art. 66B, § 1 in order to exempt certain subdivisions. Characterizing the Ordinance as a curative act, appellants argue that, because they have the power to exempt certain subdivisions prospectively, they also have the power to exempt such subdivisions retroactively, as long as such retroactive exemptions do not interfere with vested rights.[12] Appellants argue that it is appellees' burden to demonstrate that the Ordinance effected a change in legislative policy, and that appellees failed to meet that burden.[13]

We need not determine whether appellants would have had the ability to exempt certain subdivisions retroactively, as we do not read the Ordinance to effectuate such a result, and find no support in the record for appellants' interpretation.[14] The preamble to the Ordinance, which sets forth purposes of the Ordinance, contains no indication that a purpose of the Ordinance is to exempt certain small subdivisions retroactively. The preamble states in pertinent part that

---

**12.** Appellees never have argued that the Ordinance interferes with vested rights or otherwise violates due process, but instead, have limited their arguments to the question of whether the Ordinance exceeds appellants' authority under the enabling act.

**13.** The change-in-policy test often is applied in order to determine whether a statute is merely curative or whether it interferes with vested rights. *See Waters Landing Ltd. v. Montgomery County,* 337 Md. 15, 29–33, 650 A.2d 712 (1994) (and cases cited therein).

**14.** Appellants concede that if appellees' interpretation is correct, the Ordinance is invalid.

the St. Mary's County Office of Planning and Zoning has requested that Zoning Ordinance No. 90–11 and the Subdivision Regulations be amended to revise the parcel of record definition and date. The parcel of record date would be changed from March 15, 1978 to August 1, 1990, the date of the Zoning Ordinance No. 90–11, *to recognize otherwise legal parcels transferred by deed after March 15, 1978 but not legally subdivided.* The parcel of record date for all land located within the Chesapeake Bay Critical Area will be December 1, 1985 in accordance with the grandfathering provision of the St. Mary's County Critical Area Ordinance and state law.

(Emphasis added.)

In 1987, and prior to enactment of the Ordinance, the term "parcel of record" was added to the subdivision regulations and zoning ordinance, and it was defined as follows:

An individual parcel of land recorded separately in the Official Land Records of St. Mary's County, Maryland, as of March 15, 1978. Each so designated parcel of record shall be allowed up to 8 lots in a Basic or Minor Subdivision. Only County or State Road rights-of-way which existed on March 15, 1978 shall be considered parcel dividers which divide a parcel into 2 or more parcels of record.

The first sentence set forth above contains the full definition of the phrase "parcel of record," that is, "[a]n individual parcel of land recorded separately in the Official Land Records of St. Mary's County, Maryland, as of March 15, 1978." While, at first glance, the second sentence appears to support the County's interpretation, we read this to do nothing more than reiterate the requirements of "basic" and "minor" subdivisions. This sentence does not limit the "parcel of record" definition.

In any event, this second sentence has been deleted. After the enactment of the Ordinance, "parcel of record" is defined by the subdivision regulations and zoning ordinance as follows:

An individual parcel of land outside the Chesapeake Bay Critical Area (CBCA) recorded separately in the land rec-

ords of St. Mary's County, Maryland as of August 1, 1990, or an individual parcel of land within the CBCA recorded separately in the land records of St. Mary's County, Maryland as of December 1, 1985. Only county or state road rights-of-way which existed on March 15, 1978, shall be considered parcel dividers which divide a parcel into two (2) or more parcels of record.

Consistent with the purpose set forth in the preamble, the amended parcel of record definition plainly acts as a blanket exemption of *all* lots that failed to comply with the subdivision regulations between March 15, 1978 and August 1, 1990, and not merely as an exemption of lots located within subdivisions of eight or fewer lots.

Appellants argue that the key to their interpretation of the Ordinance is the definitions of "basic," "minor," and "major" subdivisions. They argue that the definitions of "basic" and "minor" subdivisions incorporate the phrase "parcel of record," in contrast to the definition of "major" subdivision which does not include the phrase "parcel of record." We see no merit to appellants' argument.

Both prior to and since the effective date of the Ordinance, the subdivision regulations and zoning ordinance have utilized the definition of "subdivision" provided in Art. 66B, § 1.00. That definition is as follows:

> the division of a lot, tract, or parcel of land into two or more lots, plats, sites, or other divisions of land for the purpose, whether immediate or future, of sale or building development. It includes resubdivision and, when appropriate to the context, relates to the process of resubdivision or to the land or territory subdivided.

Both prior to and since the effective date of the Ordinance, the specific categories of subdivisions have been defined by the zoning ordinance [15] as follows:

---

15. The language of the definitions contained in the subdivision regulations varies slightly from those contained in the zoning ordinance.

SUBDIVISION, BASIC—The division of a parcel of record such that no more than three (3) buildable lots are created which do not have public road frontage, or private right-of-way which is recorded in the land records as of the effective date of this resolution. Basic subdivision lots may be served by a 20 ft. right-of-way, but no more than 3 lots shall be served by any 20 ft. right-of-way. A road maintenance agreement is required prior to recording any lots.

SUBDIVISION, FARMSTEAD—Minor subdivisions in which all lots are 15 acres or larger. Farmstead subdivisions are permitted without road design standards.

SUBDIVISION, MAJOR—Any subdivision not defined as a minor, basic or farmstead subdivision.

SUBDIVISION, MINOR—The division of a parcel of record which creates 4 to 8 lots which do not have frontage on a public road, or private right-of-way which is recorded in the county land records as of August 1, 1986. Minor subdivision lots shall be served by a road designed and built to the modified R–1 standard. A road maintenance agreement is required prior to recording any lots.

We agree with appellees that the reference to "parcel of record" in the definitions of "minor" and "basic" subdivisions, and the exclusion of such reference in the definition of "major" subdivisions, do not limit the definition of "parcel of record" to include only "minor" and "basic" subdivisions. Such an interpretation can result only from a strained reading of the subdivision definitions, definitions which were in place at the time the Ordinance was adopted. If, in fact, the phrase "parcel of record" is limited to subdivisions of eight or fewer lots, such limitation would appear in the definition of "parcel of record."

Our interpretation is borne out by the record. Planning Commission Minutes and County Commissioners Minutes indicate that the Ordinance was proposed in order to solve

---

Such variations, however, are not pertinent to this discussion. *See* footnote 4.

administrative headaches and to assist property owners who believe they own buildable lots, *i.e.*, to correct the effects of years of ineffective enforcement of the subdivision regulations:

> Mr. Meinert offered staff's proposal to resolve the deeded parcel situation. He suggested revising the parcel of record date, possibly to coincide with the date of the new Ordinance, make a big effort to publicize the fact that the Commission would look very seriously upon exception requests after that time, and get the word out that when this will take effect the deeded parcel concept would no longer be an effective way of subdividing property. He said staff really feels something must be done to get the situation under control, because staff is coming into contact with it on a daily basis and has to go through virtually a complete title search of the property on our own time in order to justify whether a person has a parcel of record. This is very upsetting to permit applicants.
>
> Another ramification of the current process is that applicants are sent over to the Courthouse to get deeds they need to prove they have a parcel of record, and sometimes that involves applicants going back and forth 3 or 4 times; this increases their frustration with staff, only to be told at the end of the line that they don't have a parcel of record.
>
> The other alternative would be the Task Force mentioned earlier tonight, but Mr. Meinert said he thought the staff would prefer the "cleaning the slate" approach.

Excerpts from April 22, 1991 Planning Commission Minutes.

> Mr. Meinert noted for the record that the St. Mary's County Subdivision Regulations (Sections 1.04B and 2.04C) as well as Article 66B of the Annotated Code, stipulate that the only way a property can be legally transferred or partitioned is through the subdivision approval process. He stated that this is a very problematic area because, evidently, since March 15, 1978, there have been a number of parcels partitioned by deed. This is extremely frustrating for both OPZ staff and for property owners, who believe

their recorded Deed establishes a Parcel of Record and constitutes a buildable lot.

Staff's proposal is to change the Parcel of Record Date to 8/1/90, the adoption date of # 90–11, in order to "clean the slate", and legalize these parcels of record, allowing property owners in this position to have a buildable lot. . . .

Commissioner Loffler stated this is a rather landmark recommendation from OPZ, and expressed concern over OPZ's waiving their influence and advice over so many illegal subdivisions, stating that changing the parcel of record date would only perpetuate the situation, and he is interested in not just moving the date forward but solving the problem. . . .

Excerpts from July 23, 1991 County Commissioners Minutes. There is absolutely no discussion in the minutes included in this record of the allegation that the amendment was designed to apply only to subdivisions of eight or fewer lots.

Moreover, appellants' argument that the Ordinance is nothing other than a retroactive adoption of "standard and customary exemptions," further is undercut by the fact that the County never has enacted such exemptions prospectively. The exemptions adopted in 1987, § 4.09C, are not keyed to subdivision size. Moreover, such exemptions do not apply to any property the owner wishes to develop. Even for properties described in § 4.09C, all subdivision regulations must be complied with before a building permit is issued.

There is nothing in the record to indicate that the effect of the Ordinance is to provide such "standard and customary" exemptions. It validates all subdivisions retroactively without an indication of the subdivisions affected. For all of these reasons, we affirm the portion of the judgment declaring the Ordinance to be invalid.

## II.

### Writ of Mandamus

After holding the Ordinance invalid, the trial court issued a writ of mandamus "ordering the County Commissioners

and/or the Planning Director to take appropriate action to enforce the provisions of Article 66B of the Annotated Code of Maryland, the St. Mary's County Zoning Ordinance, and the Subdivision Regulations issued thereunder, including filing actions in the Circuit Court for St. Mary's County to enjoin the transfer or sale of subdivisions that have not been approved by the Planning Commission and to recover the penalties authorized by Section 5.05 of Article 66B from those persons and entities violating said statute...." [16]  The trial court issued such relief without any discussion of the appropriate standard for issuance of a writ of mandamus or any discussion of whether appellees had demonstrated entitlement to a writ.

Recently, the Court of Appeals reviewed the standard for issuance of a writ of mandamus. *Goodwich v. Nolan,* 343 Md. 130, 145–52, 680 A.2d 1040 (1996). The Court noted that mandamus is

> "an extraordinary remedy[,]" *Ipes v. Board of Fire Commissioners of Baltimore,* 224 Md. 180, 183, 167 A.2d 337 (1961), "that ... will not lie if [there is] any other adequate and convenient remedy[.]" *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 718, 337 A.2d 77 (1975) (quoting *Applestein v. Baltimore,* 156 Md. 40, 45, 143 A. 666 (1928)). Mandamus is generally used "to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Criminal Injuries Compensation Board v. Gould,* 273 Md. 486, 514, 331 A.2d 55 (1975); *see also George's Creek Coal & Iron Co. v. County Commissioners,* 59 Md. 255, 259 (1883). The writ ordinarily does not lie where the action to be

---

16.  The trial court also granted appellees an injunction enjoining the Director of the Office of Planning and Zoning "from issuing building permits and other permits for development of land which has been subdivided in violation of Article 66B and Section 104(b) of the Subdivision Regulations of St. Mary's County...." Appellants do not challenge that portion of the relief.

reviewed is discretionary or depends on personal judgment. *Board of Education of Prince George's County v. Secretary of Personnel*, 317 Md. 34, 46, 562 A.2d 700 (1989); *In re Petition for Writ of Prohibition*, 312 Md. 280, 305–06, 539 A.2d 664 (1988); *see also Tabler v. Medical Mutual Liability Insurance Society*, 301 Md. 189, 202 n. 7, 482 A.2d 873 (1984); *Bovey v. Executive Director, HCAO*, 292 Md. 640, 646, 441 A.2d 333 (1982); *Maryland Action for Foster Children v. State*, 279 Md. 133, 138–39, 367 A.2d 491 (1977). *Id.* at 145, 680 A.2d 1040.

■ Appellants argue that the issuance of a writ of mandamus was improper because the enforcement of subdivision laws under Art. 66B, § 5.05 is completely discretionary with the County. Appellants argue that a writ of mandamus may issue only in cases involving ministerial acts as opposed to discretionary acts.

We agree with appellants that the enforcement mechanism of Art. 66B, § 5.05 leaves to the County the discretion of choosing the method of enforcement. Art. 66B, § 5.05 provides in pertinent part as follows:

> The county or municipal corporation *may* enjoin the transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction or *may* recover the penalty by civil action in any court of competent jurisdiction.

(Emphasis added.) The trial court's order could be read to *require* that the county seek imposition of civil penalties and injunctions in every instance of a violation of § 5.05, when § 5.05 clearly gives to the County the discretion to decide when and if to enjoin or recover civil penalties for violations of § 5.05.[17] Alternatively, if the order is read to require appel-

---

17. Appellees argue that, by contrast, the County's subdivision regulations use the word "shall" instead of "may," implying that the County has waived its discretion. In particular, appellees cite to § 2.03C of the subdivision regulations, which states that the Zoning Administrator shall deliver a citation to any person or firm believed to be responsible for violations of the subdivision regulations. We disagree. The trial court's order is directed at the County Commissioners and the Planning

lants merely to enforce the law, it is unnecessary. In any event, the writ should not have issued in this case.

█ While it is true that mandamus *is* available to remedy abuses of discretion, *Goodwich*, 343 Md. at 146, 680 A.2d 1040; *Silverman v. Maryland Deposit Ins. Fund Corp.*, 317 Md. 306, 325–26, 563 A.2d 402 (1989); *Gould*, 273 Md. at 501–02, 331 A.2d 55; *Tyler v. Baltimore County*, 251 Md. 420, 425–26, 247 A.2d 704 (1968); *State Health Dep't v. Walker*, 238 Md. 512, 523, 209 A.2d 555 (1965); *Hammond v. Love*, 187 Md. 138, 143–44, 49 A.2d 75 (1946), there has been no showing by appellees that the County abused its discretion in failing to seek an injunction or civil penalties in any particular case. For these reasons, the issuance of the writ of mandamus was improper, and we shall vacate that portion of the judgment.

We are mindful that, as a result of our disposition of the issues presented in this case, the problems which gave rise to appellant's attempted resolution will continue to exist. Appellant's attempt, found legally wanting, may not be the only avenue of governmental relief. It is possible that appellant, in addition to utilizing its own legislative capability, may be able to look to the General Assembly for assistance.

It is not appropriate for us to suggest limitations on the possible alternatives. We do observe, however, that the County's present subdivision regulations contain a case-by-case mechanism by which individual property owners can petition the planning commission for exceptions. *See* § 1.12. According to the record, this vehicle, though cumbersome, has been

---

Director, not the Zoning Administrator. Although the Zoning Administrator is required to issue citations whenever a violation is believed to have occurred, the enforcement of the regulations is squarely within the province of the Planning Director pursuant to § 2.04A. Although § 2.04A states that "[i]t *shall* be the duty of the Director ... to enforce the regulations, ..." (emphasis added) the regulations do not mandate how the Director shall enforce the regulations. Indeed, the fact that discretion is retained by the County is evidenced by the balance of § 2.04A. Section 2.04A provides that it shall be the duty of the Director "... *where merited,* to bring to the attention of the Commission, County, or State's Attorney any violations or lack of compliance therewith." (Emphasis added.)

invoked previously by affected property owners and relief has been granted.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART; COSTS TO BE PAID ½ BY APPELLANTS AND ½ BY APPELLEES.