38 A.3d 493

**FALLS ROAD COMMUNITY ASSOCIATION, INC., et al.**

v.

**BALTIMORE COUNTY, Maryland, et al.**

**No. 2133, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

March 1, 2012.

426

Michael R. McCann, Towson, MD, for Appellant.

James Nolan, Towson, MD, & Paul M. Sandler (Matthew A.S. Esworthy, John J. Lovejoy, Shapiro, Sher, Guinot & Sandler, on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., MEREDITH, MATRICCIANI, JJ.

MATRICCIANI, J.

On August 8, 2008, the Falls Road Community Association, Inc., Dennis Sutton, and Kathleen House filed suit in the Circuit Court for Baltimore County, naming as defendants Oregon, LLC, and Baltimore County, Maryland. On August 31, 2010, the court granted summary judgment in favor of appellees on appellants' counts requesting writs of *mandamus*. The court allowed appellants' request for declaratory judgments to proceed and, after a three day trial, entered judgment in favor of appellees on September 29, 2010. The court subsequently denied appellants' motion to alter or

amend judgment, and appellants noted this timely appeal on November 9, 2010.[1]

## QUESTIONS PRESENTED

Appellants present the following questions, which we have edited to comport with our discussion:

I. Whether the Circuit Court erred in granting Appellees' motions for summary judgment on Appellants' claims for *mandamus* relief in Counts I, II, and III?

II. Whether the Circuit Court erred in entering judgment for Appellees on Appellants' claim for declaratory relief in Count IV?[2]

For the reasons that follow, we answer no to both questions and we affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

### Factual History

Oregon leases from The Baltimore County Department of Recreation and Parks ("Parks Department") a 2.63 acre parcel of land located on the grounds of the Oregon Ridge Park.[3] The

---

1. Kathleen House has since withdrawn from this appeal.

2. Appellants' brief presents their questions, thusly:

 A. Whether the Circuit Court erred in granting Appellees' motions for summary judgment on Appellants' claims for mandamus relief in Counts I, II, and III on the ground that the duties imposed upon Baltimore County are discretionary in nature?

 B. Whether the Circuit Court erred in entering judgment for Appellees on Appellants' claim for declaratory relief in Count IV on the ground that such relief would not terminate the uncertainty or controversy giving rise to this action?

 C. Whether the Circuit Court erred in entering judgment for Appellees on Count IV on the ground that coercive or injunctive relief is not available under the Maryland Declaratory Judgment Act?

 This presentation would unnecessarily limit the grounds upon which we may affirm the court's judgment, and so we have edited them to remove that specificity.

3. The original lessee was Oregon General Store Limited Partnership, which assigned its rights under the lease to Oregon in 1996. Oregon

lease provides that Oregon's use must comply with all federal, state, and local laws, ordinances, and regulations, and reserves for the Parks Department the "right and duty at all times, to exercise full governmental control and regulations with re- spect to all matters connected with the Lease[.]"

In 1994, the County submitted three petitions to the Balti- more County Zoning Commissioner. First, the County re- quested a special hearing, pursuant to Baltimore County Zoning Regulations ("BCZR" or the "Regulations") § 500.7, to determine whether the property and Oregon's proposed im- provements were exempt from the Regulations. Second, the County requested a special exception to allow a restaurant on the property. Third, the County requested a special variance from BCZR § 409.8, which required a paved parking lot.[4]

On June 28, 1994, the Deputy Zoning Commissioner deter- mined that, because the property was being leased to a private party, its use would be subject to the BCZR. The Deputy Commissioner simultaneously granted the County's petition for a special exception to operate a restaurant, on the condi- tion that its outdoor area must be used only for seated dining—not for catering or special events—and must not employ "tents, canopies, or other similar overhead covering," except for "table umbrellas."[5] Finally, the Deputy Commis- sioner granted a variance to allow a parking lot of "crushed stone or other permeable surface in lieu of the required paving," so as not to "disturb the natural state" of the parking area.

---

accepted all of the General Store's duties and obligations under its lease with the County.

4. The County had originally requested a variance allowing fewer spaces than required by the BCZR, but later withdrew that request in favor of a variance from the paving requirement. The County would later reinstate its request before the Board of Appeals after recalculating the number of spaces required to be 145 rather than 94.

5. The Deputy Commissioner imposed these restrictions because the County Zoning Regulations prohibit "catering" on the property.

Various individuals and community associations appealed the zoning commissioner's decision. While the appeal was pending, Oregon entered into a restrictive covenant with The Valleys Planning Council, Inc., whose terms refined certain terms of the Deputy Commissioner's order. The County and Oregon incorporated these terms in a supplemental lease agreement of November, 1994.

On February 8, 1995, the County Board of Appeals issued an order that upheld the Deputy Commissioner's order granting the County a special exception. The Board's order incorporated certain of the covenanted terms:

3. The alternate outdoor dining area/patio locations ... shall only be utilized for dining or pre-dinner cocktails, so long as patrons are subsequently served dinner, and shall be limited in quantity to 125 persons. There will be no outdoor bars, live music, tents, or similar overhead coverings on or serving the outdoor dining area. Music shall not be audible from any neighboring residences that exist as of the date of this Board's Order.

\* \* \*

9. The parking area shall consist of a non-paved surface such as stone or a similar permeable surface unless otherwise required by law. All parking will be contained within the leased area.

The Board's Order also granted the County a variance to allow "94 parking spaces in lieu of the required 145."

In April, 2002, Oregon was negotiating the lease of an adjacent parcel from the County in order to expand its property and filed three zoning petitions, all seeking to amend the Board's 1995 order. First, Oregon requested a special hearing to remove restrictions on the outdoor seating area, including restriction three (above). Second, Oregon sought to expand the area subject to the special exception in order to provide additional parking on property yet to be leased. Third, Oregon sought a variance to permit the expanded portion of the parking lot to be "stone ... in lieu of a durable and dustless surface" required by BCZR § 409.8, so that its

use would be consistent with restriction number nine of the 1995 order.

The Board denied Oregon's petitions in an order dated July 2, 2004. The accompanying memorandum explained that because the adjacent property was not yet leased from the County, Oregon was not an "interested person" under Maryland Code, Article 25A, § 5(U), and the Board lacked authority to grant Oregon's petitions. Notwithstanding that determination, the Board went on to address several substantive issues raised in Oregon's petitions and in the protestants' oppositions thereto. The Board explained that Oregon's arguments against the outdoor seating restrictions could have been raised during the proceedings in 1995, but because they were not, the Board would not disturb the 1995 restrictions. The Board noted that while Oregon "is certainly entitled to file [its] requested changes to the original 1995 Board's Order, in the form of a special hearing, special exception, or variance request, it is the responsibility of this Board not to disturb the original Board's Order simply to accommodate the desires of the Petitioner in response to the increased popularity and prestige of his establishment." Similarly, Oregon's opponents charged it with operating in violation of its special exception and requested that the Board "revisit the entire special exception because it[ was] a change of the prior use." But the Board explained that it would not do so because, "if the restaurant was operating illegally, it more appropriately was the subject of a 'Code Enforcement' action—subject to investigation and determination by the Department of Permits and Development Management." The Board did, however, note its concern as to whether Oregon "is in compliance with the original Board's Order relative to the parking lot surface" because an engineering expert testified that the then-existing parking lot was "tar and chip" with a stone base and macadam covering, "which is considered impervious by Baltimore County for purposes of stormwater management." The Board therefore denied Oregon's petitions for a special exception and variance because—among other reasons—the "existing and proposed parking lots considerably exceed the 10% permeabil-

ity limit set forth in BCZR § 1A03.4.B.3." [6] The Board's opinion concluded by denying all three of Oregon's petitions. [7]

In early 2006, the Parks Department Director decided to investigate citizen complaints about the condition of Oregon's parking lot. On March first of that year, the County Department of Permits and Development Management ("Permits and Development") received a memorandum from the Parks Department Director, who wrote as the "landlord and property owner" to request a property inspection so that the County could "formalize a plan and design that [would] allow the department to conform to ADA as well as safety requirements as they relate to the parking lot conditions." [8]

A Permits and Development Department staff member inspected the parking lot and wrote to his director that "[t]he parking lot is not ADA compliant due to the fact that the access route has numerous potholes" and because "[p]arking space striping is non existant" [sic]. The staff member further advised that "[s]triping, repaving & proper sign height is needed at the site ASAP to avoid any future issues with ADA requirements and to [reduce [9]] chances of personal injury." On March 28, 2006, the Permits and Development Director forwarded these findings to the Parks Department Director.

On June 8, 2006, the Parks Department Director notified Oregon in writing that because "the parking lot violates the

---

**6.** This section provides, as follows:

 3. Coverage. Except for a rural cluster development, which is subject to the performance standards contained in Section 1A03.5, no more than 10% of any lot in an R.C.4 Zone may be covered by impermeable surfaces (such as structures or pavement). No more than 25% of the natural vegetation may be removed from any lot in an R.C.4 Zone.

**7.** Oregon did not appeal this decision. What happened next between Oregon and the County is unclear, but it appears that they consummated their lease of the additional property.

**8.** The term "ADA" refers throughout this opinion to the Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101, *et seq.*

**9.** The staff member used the word "admonish," which appears to have been a mistake.

Americans with Disabilities Act," Oregon was "in default under the terms of the Lease." The letter therefore "demanded" that Oregon, at its own expense, "pave the parking lot to bring it into compliance with the ADA and to remedy its unsafe condition." The letter further notified Oregon that if it failed to take that action within fifteen days, the Department would "enter upon the premises and make the necessary repairs to the parking lot," with Oregon still to bear the costs.

Sometime in November of 2006, a contractor paved the property's parking lot. The Parks Department inspected the property and, on November 30, notified Oregon that "the parking lot **is in compliance** with the Americans with Disabilities Act" (emphasis in original), and that should Oregon fail to pay the contractor's invoice of $85,700.00, the Parks Department would "have the right, but not the obligation, to terminate the Lease, take possession of the premises and pursue any and all legal remedies it may have under the Lease and Maryland Law."

In a letter dated December 19, 2006, counsel for Oregon wrote a letter to the Parks Department and explained that he thought it "necessary to summarize the sequence of events leading up to this demand for payment letter." Counsel then wrote that after giving Oregon notice of default, "Baltimore County exercised its right to enter upon the premises and repair the condition of the parking lot, and retained the services of George Cowman, Jr., Inc. to pave the parking lot."

At some point prior to this action, Oregon installed several large squares of fabric over the outdoor seating area, each approximately ten feet on a side, hanging from structures resembling streetlights that line the area's perimeter and are bolted into the ground. Beneath each square hangs an electric ceiling fan with lights.

In 2007, appellants contacted the Permits and Development Director, the Parks Department Director, the County Office of Law, and the Director of Environmental Protection and Resource Management, and requested that each take action to change Oregon's present condition. In the summer of 2008,

the County Office of Law informed appellants that the County would not act on the appellants' requests.

## Procedural History

In August, 2008, appellants brought suit against Oregon and the County in circuit court.

In the first three counts of their complaint, appellants requested that the court issue writs of *mandamus* ordering Baltimore County to "comply with the County Code and County Charter" and enforce the terms of the Board's orders, its supplemental lease agreement with Oregon, and BCZR § 1A03.4.B.3 (the impervious surface limitation). In count four, appellants also requested that the court:

A. enter a declaration that Oregon has violated and shall refrain from further violating (i) the terms of the February 1995 and July 2004 orders of the Board of Appeals, (ii) the terms of the Lease Agreement and Supplemental Lease Agreement; and (iii) the impervious surface limitation in 1A03.4.B.3 of the Zoning Regulations;

B. enter a declaration that the County has failed to comply with its duties under the County Code and the County Charter by (i) failing to enforce the terms of the February 1995 and July 2004 orders entered by the Board of Appeals; (ii) failing to enforce the terms of the Supplement Lease Agreement; (iii) failing to enforce the impervious surface limitation in section 1A03.4.B.3 of the Zoning Regulations; and

C. enter a declaration that the terms of the February 1995 and July 2004 orders of the Board of Appeals are fully enforceable and shall be enforced by the County, including the terms of those orders providing that: (i) catering and the hosting of weddings or outdoor events at the Oregon Grille is prohibited; (ii) the parking lot at the Oregon Grille shall remain a non-paved surface such as stone or similar permeable surface; and (iii) all parking at the Oregon Grille shall be contained within the area leased from the County;

D. enter a declaration that the terms of the Lease Agreement and Supplemental Lease Agreement are fully enforceable and shall be enforced by the County, including the terms providing that: (i) the outdoor dining area at the Oregon Grille shall be used only for dining or pre-dinner cocktails so long as patrons are subsequently served dinner; (ii) catering and the hosting of weddings or outdoor events at the Oregon Grille is prohibited; (iii) the parking lot at the Oregon Grille shall remain a non-paved surface such as stone or similar permeable surface; and (iv) the Property shall "fully comply with all federal and state laws, county ordinances, and regulations of public authority", including but not limited to the impervious surface limitation in section 1A03.4.B.3 of the County's Zoning Regulations;

E. enter a declaration that the Americans with Disabilities Act does not require that the entire parking lot at the Property be paved;

F. enter an order that Oregon shall remove all paving from that portion of the parking lot at the Property that is not required to be paved under the Americans with Disabilities Act; and

G. grant such other and further relief that the nature of this cause requires.

On June 1, 2010, appellants moved for partial summary judgment. Oregon opposed appellants' motion and filed a cross-motion for summary judgment. Appellants argued that it was undisputed that appellees had violated the Board's orders and breached the lease agreement, and that the court should issue a writ of *mandamus* "directing the County to enforce the prohibitions against: (1) paving the parking lot; (2) having more than 94 parking spaces in the parking lot; and (3) installing permanent canopies in the outside dining area[,]" and enter "a declaration that the ADA does not and did not require the paving of the parking lot," as well as "a declaration that the County and Oregon, at their expense, shall remove the paving from the parking lot and return that area of the Property to a permeable condition[.]"

On August 31, 2010, the court entered summary judgment against appellants on the issue of *mandamus.* In the same order, the court denied appellants' motion for summary judgment on its declaratory counts, leaving those requests for trial.[10]

At trial, Parks Department Director Robert Barrett testified that he advised Oregon that it could bypass the County's competitive bidding process by selecting a paving contractor, and he asserted that the County had no involvement in the process beyond its written notices, detailed above. Oregon's witness and owner, Theodore Bauer, denied selecting or meeting the contractor and testified that the County had retained the contractor (as Oregon's counsel stated in the aforementioned letter of December 19, 2006). The court also heard testimony from David Carroll, Director of the County Office of Sustainability. Carroll testified that the parking lot surface was impermeable at the time of the Board's 1995 order and remained impermeable after the paving in 2006.

At the conclusion of trial, the court found that the fabric coverings in the outdoor seating area were "very large umbrellas" that complied with the Board's orders, and that neither the ADA nor BCZR § 1A03.4.B.3 required that the lot be paved. However, the court found that the parking lot's impermeable surface and number of parking spaces violated the Board's orders.[11] The court then held that although appellants "may have been required to institute some zoning

---

**10.** The court's order also granted appellants' motion for summary judgment on Oregon's counterclaim, which requested a declaration "that Oregon may host private parties or other outdoor events at the Oregon Grille[.]" The court held that although the Board had denied a similar request by Oregon in 2004, that did not establish *res judicata* because the relief sought in Oregon's counterclaim was "warranted by changes in circumstances since the last administrative review." Nevertheless, the court granted summary judgment against Oregon on the grounds that Oregon had not exhausted its administrative (zoning) remedies.

**11.** The Court found that the leased property was not a "lot," and that the regulation's surface restriction percentage thus applied to the whole of Oregon Ridge Park.

action" to enforce the Board's orders and BCZR § 1A03.4.B.3, this did not preclude declaratory relief because the zoning action was a "concurrent remedy" [12] under § 3–409(c) of the Maryland Uniform Declaratory Judgments Act, and because the court was "not entirely persuaded that there is . . . an adequate remedy available to the Plaintiffs under the zoning law[.]" However, the court held that declaratory relief would not terminate the uncertainty or controversy, that it would not be "proper," under section 3–412 of the Declaratory Judgment Act, to order Oregon to remove the paved surface at its own expense, that appellants had not requested that the court order the County to remove the paved surface itself, and that § 3–409 of the Declaratory Judgment Act did not authorize injunctive relief. Therefore, the court denied appellants' request for relief and entered judgment in favor of appellees. The court subsequently denied appellants' motion to alter or amend judgment, and appellants noted this timely appeal.

---

**12.** This section of the Declaratory Judgment Act, Md.Code (1974, 2006 Repl.Vol.), § 3–401 to 3–415 of the Courts and Judicial Proceedings Article ("CJ"), is entitled "Discretionary Relief" and provides as follows in § 3–409:

(a) *In general.*—Except as provided in subsection (d) of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

(b) *Special form of remedy provided by statute.*—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

(c) *Concurrent remedies not bar for declaratory relief.*—A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

(d) *Exception as to divorce or annulment of marriage.*—Proceeding by declaratory judgment is not permitted in any case in which divorce or annulment of marriage is sought.

(e) *Speedy hearing.*—A court may order a speedy hearing of an action of a declaratory judgment and may advance it on the calendar.

## DISCUSSION

It is easy to conceive of government as the Heraclean offspring of our mortal electorate and our immortal ideals, acting with heroic purpose and singleness of mind. But in reality, government more often resembles the many-necked Hydra, flickering its tongues and periodically replacing its departed heads. And while we wish to call upon our government as a hero, we face the tragic reality that it is fundamentally an amalgamation of elected and appointed *people,* each doing his or her best to serve the public but unable to maintain perfect consistency in all circumstances. Thus we find Oregon, directed in contradiction by the County's various heads. Appellants, meanwhile, take the County to be an animal at their command that must mindlessly enforce the law in its various forms. But the County is no beast, and there is a process to resolve these conflicts and direct the County's actions. Because appellants have not availed themselves of that process, we shall affirm the judgments in favor of appellees, albeit on grounds different than the trial court's rulings.[13]

## I. Duty, Discretion, and *Mandamus*

Appellants first contend that the trial court erred when it held that the requested relief was within the County's discretion and therefore refused to issue writs of *mandamus.* Appellants argue that *mandamus* should have issued because "the County had a clear, non-discretionary duty to enforce the Orders of the Board of Appeals, the Zoning Regulations, and the Supplemental Lease Agreement."[14]

---

**13.** Our answers to both questions presented turn on matters of law that we review *de novo. See* Md. Rule 8–131(c); *Marwani v. Catering by Uptown,* 416 Md. 312, 319, 6 A.3d 928 (2010) (the appellate court reviews statutory interpretation *de novo* (citing *Friendly Fin. Corp. v. Orbit Chrysler Plymouth Dodge Truck, Inc.,* 378 Md. 337, 342–43, 835 A.2d 1197 (2003))); *Haas v. Lockheed Martin Corp.,* 396 Md. 469, 479, 914 A.2d 735 (2007) ("The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal.").

**14.** Appellants also argue that even if the County was vested with discretion, it was "clearly abused" when the County interpreted the

 A writ of *mandamus* issues "to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Goodwich v. Nolan,* 343 Md. 130, 145, 680 A.2d 1040 (1996) (quoting *Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 514, 331 A.2d 55 (1975); *George's Creek Coal & Iron Co. v. County Comm'rs,* 59 Md. 255, 259 (1883)). Importantly, *mandamus* "does not lie where the action to be reviewed is discretionary or depends on personal judgment." *Id.* (citing *Bd. of Educ. of Prince George's County v. Sec'y of Pers.,* 317 Md. 34, 46, 562 A.2d 700 (1989); *In re Petition for Writ of Prohibition,* 312 Md. 280, 305–06, 539 A.2d 664 (1988)).

Appellants argue that the County Code and Charter bind certain of its agencies to enforce the Baltimore County Zoning Regulations, Board orders,[15] and the terms of the lease between the County and Oregon.[16] First, Code § 3–2–1103

---

ADA. *See Harvey v. Marshall,* 389 Md. 243, 275, 884 A.2d 1171 (2005) (where there is no statutory provision for judicial review, courts possess the inherent power to review and correct actions by an administrative agency that are arbitrary, illegal, capricious or unreasonable). We need not address this argument, however, because no one disputes the trial court's finding—in appellants' favor—that the ADA does *not* require Oregon's entire parking lot to be paved. Appellants' present complaint has not to do with the Parks Department's misunderstanding of the ADA, but whether the County must now enforce *other* laws and regulations to remedy the results of that mistake. As such, the trial court rightly held that any relief premised on the County's misinterpretation is nugatory and thus improper. *See* CJ § 3–409(a) (a court may grant declaratory relief only if, *inter alia,* it will serve to terminate the uncertainty or controversy giving rise to the proceeding). *See also Parish v. Maryland & Virginia Milk Producers Ass'n,* 250 Md. 24, 86, 242 A.2d 512 (1968) ("A writ of mandamus will not be issued where it would be unavailing and nugatory.").

15. Because the Board's 2004 order was limited to denying Oregon's petition on jurisdictional grounds, it does not appear that it imposes any substantive restrictions on Oregon's use of the property. Whether that is so does not affect our holding, and so we refer to board "orders" in the abstract, including any or all of the Board's orders from 1994, 1995, and 2004, whatever their force or effect.

16. In this opinion, all references to Code sections refer to the Baltimore County Code at the time of the relevant events. Since that time, the

provides that the Department of Permits and Development Management "shall administer and enforce . . . [a]ll laws, maps, and regulations related to zoning[.]"[17] Appellants argue that this mandate attaches not only to the impervious surface limitation of BCZR § 1A03.4.B.3, but also to Board orders, which appellants consider to be "laws related to zoning." Second, Code § 3–2–604 states that the Department of Environmental Protection and Resource Management "shall . . . [a]dminister and enforce environmental laws, regulations, programs, and activities," which, according to appellants, includes BCZR § 1A03.4.B.3. Third, section 522.1(a)(5) of the Baltimore County Charter states that the Office of Planning and Zoning "shall have the responsibility and duty of planning for Baltimore County, including . . . [a]dministering the zoning code," and in particular BCZR § 1A03.4.B.3. Fourth, Charter Sections 523 and 533 charge the Department and the Board of Recreation and Parks with the "responsibility" and "duty" to manage park lands and to "perform such other functions and duties as may be provided from time to time by the legislative act of the county council," including the requirement in Code § 3–9–110 that any lease of parklands "[e]xpressly reserv[e] for the county administration the right and duty at all times to exercise full governmental control and regulation in respect to all matters connected with the lease not inconsistent with the terms of the lease."

■ We first note that none of the above provisions *require* the enforcement of any terms in Oregon's original or supplemental lease agreements, and we therefore agree with the

---

Department of Permits and Development Management has become the Department of Permits, Approvals and Inspections, and the Department of Environmental Protection and Resource Management has become the Department of Environmental Protection and Sustainability.

**17.** We note in passing that this section of the Code reflects the problems inherent in zoning where it states the Department of Permits and Development Management shall administer and enforce all laws, maps, and regulations related to zoning, "[n]otwithstanding any provision in the Code or in the Baltimore County Zoning Regulations to the contrary." Thus, the Code *itself* anticipates at least some contradiction in and among its various laws and regulations.

trial court's holding that the enforcement of its rights as lessor is generally within the County's discretion. While the Parks Department must *reserve* the "right and duty" to exercise governmental control and regulation, the Code nowhere requires that the Parks Department *enforce* those reserved rights and duties. Although Charter Sections 523 and 533 charge the Parks Board and Department with management of park lands, those sections do not contain specific edicts *requiring* enforcement of any particular laws or regulations. And while they are obligated to perform "other functions and duties as may be provided from time to time by the legislative act of the county council," there is no indication that the council has imposed legal or regulatory enforcement as one such function or duty. Thus, *if* the County is *obligated* to pursue its "rights and duties," that obligation must be found in the Code or Charter rather than the Park Department's contractual obligations.[18] *See Hall v. State Roads Comm'n,* 171 Md. 449, 453, 189 A. 206 (1937) ("mandamus will not lie for an alleged breach of contract"); *State ex rel. Clark v. Maryland Inst. for Promotion of Mechanic Arts,* 87 Md. 643, 41 A. 126 (1898) ("The city cannot by contract bargain away its legislative discretion, nor can such contract control its legislative or governmental authority."). *Mandamus,* therefore, will not lie to enforce the terms of Oregon's lease from the County.

■ The County argues, moreover, that § 3–6–201 of the County Code Enforcement Title trumps the foregoing provisions, but the County's posited interpretation of that section is incorrect. Section § 3–6–20 provides that "[i]n addition to any other remedy authorized by law," county officials "*may* en-

---

18. There are cases in which *mandamus* has issued to enforce a contract, but in all of them the petitioner is the contractual *obligee* with a "clear legal right" to the government's performance. *See, e.g., State ex rel. Klemm v. Baskin,* 111 Fla. 667, 668–669, 150 So. 517 (1933) (citing *Galena v. Amy,* 72 U.S. 705, 5 Wall. 705, 18 L.Ed. 560 (1867)); *see also Towson Univ. v. Conte,* 384 Md. 68, 96, 862 A.2d 941 (2004) (where there is no administrative recourse, case law does not restrict a contract plaintiff to *mandamus* or injunction). Here, appellants have no privity to the contract, nor is there a statute directing the County to enforce its contractual rights for their benefit.

force and seek correction of a violation as provided in this title" (emphasis added). The County argues that this section makes any and all enforcement permissive, citing our opinion in *Board of County Comm'rs v. Potomac River Ass'n,* 113 Md.App. 580, 688 A.2d 515 (1997). In that case, we held that enforcement under Section 5.05 of Maryland Code, Article 66B is discretionary because it contains the following permissive language:

> The county or municipal corporation *may* enjoin the transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction *or may* recover the penalty by civil action in any court of competent jurisdiction.

*Id.* at 599–603, 688 A.2d 515 (emphasis added). But unlike Article 66B of the Maryland Code, the word "may" in Baltimore County Code § 3–6–201 *follows* the phrase "any other remedy authorized by law." This syntax limits application of the word "may" to the enforcement provisions contained in the Code Enforcement Title, leaving open the possible existence of mandatory enforcement provisions elsewhere. And mandatory enforcement provisions are precisely what we find in the various Code and Charter provisions recited above.[19] Thus, while enforcement *under the Code Enforcement Title* may be permissive, the County is incorrect when it asserts that enforcement is permissive *in general.*

■ The Charter and Code allow the County to choose among various methods of enforcement, but that is the limit of the County's discretion and does not appear sufficient to overcome appellants' rights to *mandamus.* Relief by *mandamus* is appropriate where a tribunal refuses to exercise the judgment and discretion imposed upon them by statute. *See*

---

**19.** Additionally, § 32–3–602 of the Enforcement Subtitle in the Code's Planning, Zoning, and Subdivision Control Article sets civil penalties and states that representatives of the Department of Permits and Development Management *"shall* enforce the Baltimore County Zoning Regulations, policies, rules, or regulations interpreting the zoning regulations" (emphasis added). The Article sets forth additional permissive enforcement options, including the option to pursue injunctive relief in court, *see* § 32–3–607, but what matters for our purposes is that there is *at least one* mandatory enforcement method.

*Harvey v. Marshall,* 389 Md. 243, 276–77, 884 A.2d 1171 (2005) ("When an agency, in the face of a formal invocation of its discretion by an affected person coming within the class of persons contemplated by the statute, fails to act on a matter committed to its discretion by that statute, there is as much aggrievement and potential for abuse or prejudice as when an agency affirmatively announces an adverse decision."), and cases cited therein. *See also Mahoney v. Board of Supervisors,* 205 Md. 325, 335, 108 A.2d 143 (1954) ("[T]he courts, possessing inherent power to prevent violations of public trust, may grant *mandamus* requiring public officers to perform their duties without committing unlawful acts or abuses of discretion."); *Miles v. Stevenson,* 80 Md. 358, 30 A. 646 (1894); 52 Am.Jur.2d Mandamus § 49 ("Mandamus can compel the respondent to exercise his or her discretion."). Thus, while the trial court may have lacked authority to decree a *specific* course of enforcement, it could have compelled *some* enforcement action, to be chosen by the County in its discretion.[20]

Likewise, *mandamus* can direct adherence to compulsory rules of administrative procedure. *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.,* 369 Md. 439, 457, 800 A.2d 768 (2002) ("[W]e have recognized that, under some circumstances, mandamus or other traditional actions may lie to enforce administrative compliance with procedural requirements or duties."). The most convenient course would be simply to order the County to resolve the conflicts in this case by administrative proceedings and issuance of an amended order, variance, or special exception. But appellants *did not demand* that the court compel administrative proceedings, which is understandable because the County's informal acts—and present adversarial position—indicate that an administrative action likely will not resolve in their favor. But as we explain, below,

---

**20.** The trial court held that the County had discretion to determine whether zoning violations exist, but also found as fact that the parking lot is impermeable and contains more than ninety-four parking spaces, both of which are plain violations of the Board's orders. However, we need not reconcile those rulings because we hold that judicial relief is barred entirely.

this did not relieve appellants of their obligation to undertake formal administrative proceedings prior to judicial action.

## II. Administrative Exhaustion

■ The Court of Appeals addressed administrative exhaustion at length in *Board of Education for Dorchester County v. Hubbard,* 305 Md. 774, 786–87, 506 A.2d 625 (1986):

> [W]here the General Assembly has provided an administrative remedy and there also exists an independent judicial remedy, and no statute coordinates the two or specifies which is primary, we have ordinarily construed the pertinent enactments to require that the administrative remedy be first invoked and followed....
>
> Where ... the administrative remedy is deemed to be primary, this Court has generally held that it must be pursued and exhausted before a court exercises jurisdiction to decide the controversy. As explained in [*Secretary, Dep't of Human Resources v. Wilson,* 286 Md. 639, 645, 409 A.2d 713 (1979) ],
>
>> "when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme."
>
> While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated like a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court *sua sponte* even though not raised by any party.

(Internal citations omitted.) *Accord, Laurel Racing Ass'n v. Video Lottery Facility Location Comm'n,* 409 Md. 445, 458, 975 A.2d 894 (2009) (quoting the above).

■ Administrative exhaustion is a prerequisite both to *mandamus* relief and to declaratory judgment. *Md. Reclamation Assocs. v. Harford County,* 382 Md. 348, 362, 855 A.2d 351 (2004) ("[W]hen administrative remedies exist in zoning cases, they must be exhausted before other actions, including requests for declaratory judgments, mandamus, and injunctive relief, may be brought." (citing *Josephson v. City of Annapolis,* 353 Md. 667, 674–78, 728 A.2d 690 (1998))); *see also* CJ § 3–409(b) ("If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."); *Soley v. State Com. on Human Relations,* 277 Md. 521, 525–26, 356 A.2d 254 (1976) (CJ § 3–409(b) bars declaratory relief where administrative relief is available).[21]

The County argues that appellants can pursue their claims under BCZR § § 500.6 and 500.7. Baltimore County Zoning Regulation § 500.6 provides that "the Zoning Commissioner shall have the power, upon notice to the parties in interest, to conduct hearings involving any violation or alleged violation or noncompliance with any zoning regulations, or the proper interpretation thereof, and to pass his order thereon, subject to the right of appeal to the County Board of Appeals as hereinafter provided." County Zoning Regulation § 500.7 further provides, in relevant part:

The said Zoning Commissioner shall have the power to conduct such other hearings and pass such orders thereon as shall, in his discretion, be necessary for the proper enforcement of all zoning regulations, subject to the right of appeal to the County Board of Appeals as hereinafter provided. The power given hereunder shall include the

---

**21.** It appears that the trial court mistook the County's proffered administrative remedies to be "concurrent common-law, equitable, or extraordinary legal" remedies that are not a bar to recovery, *per* CJ § 3–409(b).

right of any interested person to petition the Zoning Commissioner for a public hearing after advertisement and notice to determine the existence of any purported nonconforming use on any premises or to determine any rights whatsoever of such person in any property in Baltimore County insofar as they are affected by these regulations.

Appellants argue that they have no recourse under these sections for three reasons. First, appellants claim that the plain text of BCZR § 500.7 excludes them as complainants. Specifically, they refer to the second sentence of BCZR § 500.7, which states that "[t]he power given hereunder shall include the right of *any interested person* to petition the Zoning Commissioner for a public hearing after advertisement and notice to determine the existence of any purported nonconforming use on any premises or to determine any rights whatsoever *of such person* in any property in Baltimore County insofar as they are affected by these regulations." (Emphasis added.) Appellants claim that this affords them no relief because they "did not seek a determination that Oregon has undertaken a nonconforming use or a determination of *their* rights in the subject property." But the word "include" in this sentence of § 500.7 indicates that it is illustrative and not exhaustive. The true scope of the Commissioner's power under § 500.7 is "to conduct such other hearings and pass such orders thereon as shall, in his discretion, be *necessary for the proper enforcement of all zoning regulations,* subject to the right of appeal to the County Board of Appeals as hereinafter provided." The County represented to the trial court—and introduced expert testimony to prove—that the Commissioner can and would exercise discretion under § 500.7 to entertain exactly the complaints that appellants have brought in this suit for *mandamus* and declaratory relief, and the regulations' plain text gives us no reason to reject that argument.[22]

---

22. It is not clear how we should consider the County's representations, as they do not appear to be official interpretations of law but rather the advice and opinion of counsel during adversarial litigation. We further

Second, appellants argue that §§ 500.6 and 500.7 do not offer them redress because "Appellants did not claim that Appellees violated the zoning regulations or seek an interpretation of the regulations," and that instead they "sought to enforce the terms" of the Board's orders.[23] We disagree with both appellants' premise and conclusion. As to the question of the parking lot surface, appellants plainly have claimed—and maintain on appeal—that Oregon violated a zoning regulation, *viz.*, BCZR § 1A03.4.B.3. Moreover, the other relief that appellants seek *does* require the Zoning Commissioner to interpret the language and intent of the County Zoning Regulations and the Board's orders in order to determine whether the property stands in violation thereof, and in that case which—if any—conflicting regulations must yield. *See* Code § 32–3–301; BCZR § 307.1.[24]

---

note that the County's position in this case appears to contradict the grounds upon which the Board denied Oregon's petitions in 2004. Nevertheless, we consider their representations both factually and legally persuasive in this case, given that the County could be held to them by threat of contempt or, possibly, estoppel. *See County Comm'rs v. Forty West Builders, Inc.*, 178 Md.App. 328, 395, 941 A.2d 1181 (2008) (trial court properly found county in contempt); *Berwyn Heights v. Rogers*, 228 Md. 271, 279, 179 A.2d 712 (1962) ("[T]he majority rule is to the effect that the doctrine of estoppel in pais is applied to municipal, as well as to private, corporations and individuals, at least where the acts of its officers are within the scope of their authority and justice and right require that the public be estopped.").

23. Appellants also argue that these sections cannot be used to enforce the lease, but this issue is moot for the reasons stated above.

24. Code section 32–3–301 provides:
 (a) *In general.* Except as provided in § 32–3–515 of this title and consistent with the general purpose, intent, and conditions set forth in the Baltimore County Zoning Regulations, upon petition, the Zoning Commissioner may:
 (1) Grant variances from area and height regulations;
 (2) Interpret the zoning regulations; and
 (3) Grant special exceptions.
 Baltimore County Zoning Regulation § 307.1 gives the Zoning Commissioner the power to grant variances from height and area regulations, from off-street parking regulations, and from sign regulations, but "only in cases where special circumstances or conditions exist that are peculiar to the land or structure which is the subject of the variance request and where strict compliance with the Zoning Regulations for

Third, appellants claim that the County's enforcement powers do not encompass Board orders. Appellants call attention to the fact that Code § 32-3-602(a) distinguishes between "(1) The Baltimore County Zoning Regulations, policies, rules, or regulations interpreting the zoning regulations" and "(2) Orders of the Zoning Commissioner or Board of Appeals." Appellants contrast this with subsection (b) of § 32-3-602, which states that the Permits and Development Department "[s]hall enforce the Baltimore County Zoning Regulations, policies, rules, or regulations interpreting the zoning regulations," making no mention of orders. However, the very next section of Code, § 32-3-603, provides that when issuing a citation pursuant to its enforcement powers, Permits and Development must state "[t]he section number of the zoning

---

Baltimore County would result in practical difficulty or unreasonable hardship." Section 307.1 further provides that "any such variance shall be granted only if in strict harmony with the spirit and intent of said height, area, off-street parking or sign regulations, and only in such manner as to grant relief without injury to public health, safety and general welfare." Zoning Regulation § 502.1 places similar conditions on Commissioner's authority to grant special exceptions:

Before any special exception may be granted, it must appear that the use for which the special exception is requested will not:

A. Be detrimental to the health, safety or general welfare of the locality involved;

B. Tend to create congestion in roads, streets or alleys therein;

C. Create a potential hazard from fire, panic or other danger;

D. Tend to overcrowd land and cause undue concentration of population;

E. Interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences or improvements;

F. Interfere with adequate light and air;

G. Be inconsistent with the purposes of the property's zoning classification nor in any other way inconsistent with the spirit and intent of these Zoning Regulations;

H. Be inconsistent with the impermeable surface and vegetative retention provisions of these Zoning Regulations; nor

I. Be detrimental to the environmental and natural resources of the site and vicinity including forests, streams, wetlands, aquifers and floodplains in an R.C.2, R.C.4, R.C.5 or R.C.7 Zone.

*See also* BCZR § 600.1 ("In their interpretation and application, these regulations shall be held to be the minimum requirements for the promotion of the public health, safety, convenience and general welfare.").

regulation, policy, rule, or regulations interpreting the zoning regulations *or reference to the Zoning Commissioner's order that has been violated* [.]" [25] In light of these conflicting provisions and the Department's consistently broad enforcement authority, the omission of "orders" from § 32–3–602(a) is no more than a drafting oversight. Thus, the Permits and Development Department has authority to enforce the Board's orders, if necessary by maintaining an action for injunctive relief under Code § 32–3–607, which introduces yet another variation on the theme by granting the power to enjoin "the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, and land *in violation of this title or the zoning regulations and restrictions adopted under this title.*" But the Board's orders enact restrictions that are adopted under the Code's Zoning Title, and therefore the Department can enforce them by injunction, if it so chooses.[26]

We are thus persuaded that administrative proceedings under Code §§ 500.6 and 500.7 can address and resolve appellants' complaints as to the disputed Zoning Regulations and Board orders. Furthermore, there is nothing to rebut the presumption that these administrative remedies are primary and that they must be exhausted before appellants pursue their requested relief by *mandamus* or declaratory judgment.

---

**25.** We note that appellants *themselves* argue that Code § 3–2–1103 compels Permits and Development to administer and enforce "[a]ll laws, maps, and regulations related to zoning," and that a Board order should be considered "a law related to zoning."

**26.** According to appellants, the trial court correctly held that the County Zoning Regulations did not afford adequate relief, arguing that they seek an injunction rather than monetary or other penalties. But as this discussion shows, the County had discretion to pursue injunctive relief. Moreover, appellants have no absolute right to injunctive relief—only the right to have the County choose some enforcement mechanism.

We further note that appellants' argument addresses only the Department of Permits and Development Management and thus overlooks additional administrative enforcement mechanisms, such as civil enforcement by the County Attorney under Code § 32–3–604(c), as well as criminal misdemeanor enforcement under § 32–3–606.

### III. Declaratory Relief

Assuming, without deciding, that administrative remedies were (or are) unavailable to appellants, appellants' requests for declaratory relief are plagued by various deficiencies, which we shall briefly catalogue before concluding our discussion.

First, the trial court was correct in holding that appellants' request for a declaratory interpretation of the ADA would not "terminate the uncertainty or controversy giving rise to the proceeding" as required by CJ § 3–409(a). As noted, above, appellees never disputed that issue, and the only question this case presents is what must be done to remedy the current situation with respect to the Board's orders and County zoning regulations. Moreover, our foregoing discussion should make it clear that "enforcement" is a complex idea, which renders appellants' requests that the court declare various laws and regulations "enforceable" so vague that such declarations would be of no effect.

Second, appellants present no argument as to the trial court's ruling that to order Oregon to remove the paving it installed at the County's request would be "necessary or proper" under CJ § 3–412(a).[27]

Third, and relatedly, we are not persuaded by appellants' argument that their request for "further relief" in the pleadings can be construed as requesting an injunction ordering the County to remove the paving. Appellants argue that by the explicit terms of CJ § 3–402, the Declaratory Judgment Act is

---

**27.** Section 3–412 of the Declaratory Judgment Act reads:
 (a) *Further relief.*—Further relief based on a declaratory judgment or decree may be granted if necessary or proper.
 (b) *Application.*—An application for further relief shall be by petition to a court having jurisdiction to grant the relief.
 (c) *Show-cause order.*—If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted.

to be liberally construed, but construction of *pleadings* are governed by the Maryland Rules. And while Rule 2–303(e) provides that "pleadings shall be so construed as to do substantial justice," the intended justice adheres to both sides of a dispute, not only to the pleader. Appellants argue that because they alleged and proved that the county was "involved" in the paving, that imbues their pleadings with the necessary substance to warrant an injunction against the county. We disagree. Pleading plays four distinct roles in our system of jurisprudence: it (1) provides notice to the parties as to the nature of the claim or defense; (2) states the facts upon which the claim or defense allegedly exists; (3) defines the boundaries of litigation; and (4) provides for the speedy resolution of frivolous claims and defenses. *Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997). Of these four, notice is paramount. *Id.* To order the County to remove the paving goes beyond mere "enforcement" and raises a host of legal and factual issues independent of appellants' other claims and requests for relief. Appellants' pleadings give no notice of this issue, nor does the record—at trial and on appeal—indicate by what authority the County could take such an action. Appellants simply cannot receive that which they did not fairly request.

Fourth, appellants present no specific argument that there was fault in the court's factual finding that the outdoor seating area coverings were "large umbrellas," that the court misinterpreted BCZR § 1A03.4.B.3, or that appellants were not in privity with the lease and so lacked standing to obtain any declarations regarding it. *See* CJ § 3–406.[28]

---

**28.** Section 3–406 of the Declaratory Judgment Act is entitled "Power to Construe" and provides, as follows:

Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

CONCLUSION

Whatever rights appellants had to press the County into action with writs of *mandamus* are preempted by the availability of administrative remedies, as are their rights to declaratory relief, if there be any that survive in spite of the defenses listed in the third part of our discussion. For these reasons, we shall not disturb the judgments of the trial court in favor of appellees.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**