**Falls Road Community Association, Inc., et al. v. Baltimore County, Maryland, et al.**
No. 39, September Term 2012


**Administrative Law - Exhaustion of Administrative Remedies - Enforcement of Restrictions in Final Orders of County Board of Appeals**. When final administrative orders of the County Board of Appeals limited the paving of, and structures placed on, park land leased to a private entity for use as a restaurant, neighbors and local community association were not required to initiate a new administrative process as a prerequisite to bringing a declaratory judgment action in court to enforce those restrictions.

**Mandamus - Common Law Mandamus - County Zoning Enforcement**. The decision of County code enforcement officials as to what, if any, enforcement action to take, with respect to an alleged violation of zoning regulations and orders, was an inherently discretionary decision. Accordingly, the Circuit Court properly declined to issue a writ of mandamus to direct County officials to take enforcement action.

**Mandamus - Common Law Mandamus - County Contractual Remedies.** County officials charged with administering a County contract had discretion to decide whether to pursue contract remedies for an alleged violation of an agreement that leased County property to a private entity for commercial purposes. Accordingly, the Circuit Court properly declined to issue a writ of mandamus to direct County officials to pursue contract remedies.

**Declaratory Judgments Act - Availability of Ancillary Injunctive Relief.** Under the Maryland Uniform Declaratory Judgments Act, Maryland Code, Courts & Judicial Proceedings, §3-401 *et seq*., a court that grants a declaratory judgment may grant further relief that is "necessary or proper" to implement the declaratory judgment as part of the declaratory judgment action itself or in a subsequent action. A plaintiff that seeks a declaratory judgment need not identify in the declaratory judgment action the specific ancillary relief that may be necessary to implement a decree.

IN THE COURT OF APPEALS
OF MARYLAND

No. 39

September Term, 2012

_____

FALLS ROAD COMMUNITY ASS'N, INC., *ET AL.*

v.

BALTIMORE COUNTY MARYLAND, *ET AL.*

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
*Bell,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: February 25, 2014

*Bell, C.J., now retired, participated in the hearing
and conference of this case while an active member
of the Court; he did not participate in the decision
and adoption of this opinion.

This case arises from a controversy about the paving of a parking lot. The parking lot is on park land leased to a restaurant and subject to various land use restrictions. Paving of the property was restricted by a formal agreement between the restaurant and a local community organization – a restriction that was incorporated in administrative zoning orders. But, despite the agreement and the orders, the lot was paved to the surprise and chagrin of some neighbors.[1] Litigation ensued.

Resolution of the case is complicated by the fact that Respondent Baltimore County appears in three somewhat conflicting guises – as landlord of the property in question (Department of Recreation and Parks), as code enforcer (Department of Permits, Approvals, and Inspections), and as final administrative adjudicator of disputes arising under local land use laws (County Board of Appeals).[2] As administrative adjudicator, it forbade the paving of the parking lot. As landlord, it directed its tenant, Respondent Oregon, LLC ("Oregon"),

---

[1] Although the particular property may fall short of paradise, this turn of events seemed to reflect the chorus of a popular song:

> Don't it always seem to go
> That you don't know what you've got
> Til it's gone
> They paved paradise
> And put up a parking lot

Joni Mitchell, *Big Yellow Taxi* (1970).

[2] It is perhaps to these different capacities of the County government that the Court of Special Appeals was alluding when it characterized government as a "many-necked Hydra" – a monster of ancient Greek mythology that was said to have between five and 100 heads. 203 Md. App. 425, 438, 38 A.3d 493 (2012). We need not count past three to find these circumstances confusing enough.

to pave the parking lot. And, as code enforcer, it decided not to take action in response to the apparent violation of the final administrative order issued by the Board of Appeals.

A local community organization, Petitioner Falls Road Community Association ("Community Association"), and two individual neighbors brought suit in the Circuit Court for Baltimore County seeking declaratory and mandamus relief against the County and Oregon.[3] The Circuit Court ruled against the Community Association, granting summary judgment as to the mandamus claims and, following a bench trial, declining to issue declaratory relief despite concluding that the paving had violated the administrative order. The Court of Special Appeals affirmed those judgments, although on a different ground than the Circuit Court – that the Community Association had failed to exhaust administrative remedies – but went on to discuss the merits of the Circuit Court rulings.

We disagree with the Court of Special Appeals, both as to whether further resort to the administrative process was required and as to its critique of the Circuit Court rulings. But the bottom line is that we largely affirm its judgment and remand for further proceedings in the trial court concerning a surviving aspect of the case.

## Background

In the Hunt Valley area of Baltimore County lies Oregon Ridge Park, a largely undeveloped woodland area covering approximately 1,200 acres and owned by Baltimore

---

[3] One of the individual plaintiffs is also a Petitioner in this appeal. Because both Petitioners are represented by the same counsel and their claims are identical, for simplicity we refer to them collectively as the Community Association in this opinion.

County. Along the edge of the park, at the corner of Shawan Road and Beaver Dam Road, is a 2.63 acre parcel (the "Property") leased by the County to Oregon. Oregon currently operates a restaurant known as the Oregon Grille in a historic building on the site. The relationship between Oregon and the County, as both Oregon's landlord and land use regulator, has developed over a number of years.

*The 1985 Lease*

Oregon leased the Property from the County under a 25-year lease that began in 1985.[4] Under that lease, Oregon agreed that, among other things, it would "fully comply with all Federal and State laws, County ordinances, and regulations of public authority ...." In addition, the County reserved "the right and duty at all times, to exercise full governmental control and regulations with respect to all matters connected with the [l]ease." The lease permitted the County to cancel the arrangement if Oregon violated any of its terms or conditions.

*The 1994 Zoning Petitions*

In March 1994, the County, as owner of the Property, filed three petitions with the Baltimore County Zoning Commissioner in connection with Oregon's planned use of the Property for a restaurant:

---

[4] The original parties to the lease were the County and Oregon General Store Limited Partnership, Oregon's predecessor. The lease was assigned to Oregon in 1996; under the assignment, Oregon agreed to assume all of its assignor's obligations under the lease.

(1) a Petition for Special Hearing to determine whether the County was exempt from the Baltimore County Zoning Regulations and alternatively to approve conversion of the existing building on the Property to a restaurant;

(2) a Petition for Special Exception seeking approval to convert the existing building on the Property to a restaurant; and

(3) a Petition for Variance to allow 44 parking spaces in lieu of the 92 spaces otherwise required for such a business under the BCZR (the existing parking lot had fewer spaces than required under the zoning regulations for a restaurant of the proposed size).

The petitions were filed pursuant to §500.7 of the Baltimore County Zoning Regulations ("BCZR").[5]

---

[5] That provision reads as follows:

§500.7. Petitions for public hearing; notice.

The said Zoning Commissioner shall have the power to conduct such other hearings and pass such orders thereon as shall, in his discretion, be necessary for the proper enforcement of all zoning regulations, subject to the right of appeal to the County Board of Appeals as hereinafter provided. The power given hereunder shall include the right of any interested person to petition the Zoning Commissioner for a public hearing after advertisement and notice to determine the existence of any purported nonconforming use on any premises or to determine any rights whatsoever of such person in any property in Baltimore County insofar as they are affected by these regulations. With respect to any zoning petition other than a petition for a special exception, variance or reclassification, the Zoning Commissioner shall schedule a public hearing for a date not less than 30 days after the petition is accepted for filing. If the petition relates to a specific property, notice of the time and

(continued...)

4

The Deputy Zoning Commissioner conducted a hearing at which a representative of the Community Association, among others, testified in opposition to the proposal.[6] On June 28, 1994, the Deputy Zoning Commissioner issued an opinion and order that allowed the conversion of the existing building on the Property into a restaurant, but set conditions on that use and affirmed the applicability of the BCZR. In particular, the Deputy Zoning Commissioner denied the Petition for Special Hearing insofar as it sought an exemption from the BCZR; he concluded that the Property was subject to the BCZR because it was being leased to a private party for commercial purposes.[7] Second, he granted the Petition for

[5] (...continued)
place of the hearing shall be conspicuously posted on the property for a period of at least 15 days before the time of the hearing. Whether or not a specific property is involved, notice shall be given for the same period of time in at least two newspapers of general circulation in the county. The notice shall describe the property, if any, and the action requested in the petition. Upon establishing a hearing date for the petition, the Zoning Commissioner shall promptly forward a copy thereof to the Director of Planning (or his deputy) for his consideration and for a written report containing his findings thereon with regard to planning factors.

[6] According to the opinion of the Deputy Zoning Commissioner, the representative of the Community Association specifically opposed the use of tents and the holding of outdoor events on the Property.

[7] The fact that the local zoning laws and regulations were applied to the Property is not at issue in this appeal. Ordinarily, the County is not subject to its own zoning regulations unless made subject to the zoning regulations by State law or its own ordinances. *See Glascock v. Baltimore County*, 321 Md. 118, 124, 581 A.2d 822 (1990). The courts have held that government-owned property leased to a private entity for commercial purposes is subject to local zoning controls. *Compare Baltimore City v. DHMH,* 38 Md. App. 570, 577-

(continued...)

5

Special Exception and approved the conversion of the existing building into a restaurant. Third, he granted the Petition for Variance allowing a smaller number of parking spaces than the zoning regulations would otherwise require for a restaurant of this size.

The use of the Property for a restaurant was made subject to a number of conditions, certain of which are relevant to this case. In particular, Oregon was prohibited from hosting parties, weddings, and other outdoor events on the Property. Oregon was permitted to have an outdoor seating area, but was not permitted to use this area for anything other than sit-down dining. Moreover, Oregon was not to have "tents, canopies, or other similar overhead covering[s]" on the patio or elsewhere, although "table umbrellas" would be permitted for outdoor diners.

Subsequently, Oregon requested that its petition for a variance from the required number of parking spaces be dismissed as it wished to expand the then-existing parking lot. It further proposed that the surface of the expanded parking lot be of "crushed stone or other permeable surface" so as to match the existing parking area. The Deputy Zoning Commissioner granted this request in an amended order issued on July 27, 1994.

*The Restrictive Covenant, the Supplemental Lease, and the 1995 Board of Appeals Order*

---

[7] (...continued)
78, 381 A.2d 1188 (1978) (use of State-owned land by private entity for public purpose not subject to local zoning) *with Youngstown Cartage Co. v. North Point Peninsula Community Co-ordinating Council*, 24 Md. App. 624, 630-31, 332 A.2d 718 (1975) (use of State-owned land by private entity for private purpose subject to local zoning); *see also* 73 *Opinions of the Attorney General* 238, 240 (1988); 78 *Opinions of the Attorney General* 58 (1993).

Oregon and various community organizations appealed the orders of the Deputy Zoning Commissioner to the Baltimore County Board of Appeals. While that appeal was pending, one of the community organizations, the Valleys Planning Council, and Oregon entered into a restrictive covenant agreement (the "Covenant") to resolve the community's concerns.[8] In exchange for the community's support for using the Property for a restaurant, Oregon agreed, among other things, that:

> (1)  the outdoor patio area could only be used for sit-down dining or for pre-dinner cocktails so long as patrons were subsequently served dinner;
>
> (2)  there would be no outdoor bars, live music, tents, or other similar overhead coverings in the outdoor dining area;
>
> (3)  the parking area at the restaurant would remain a non-paved surface such as crushed stone, "unless otherwise required by law"; and
>
> (4)  the parking area would be contained within the area leased from Baltimore County.

In November 1994, Oregon and the County, in its capacity as landlord, executed a Supplemental Lease Agreement amending and extending the 1985 lease. The amendments included the addition of a covenant by Oregon to comply with the June 28, 1994, zoning order[9] as well as certain restrictions contained in its Covenant with the Valleys Planning

---

[8] The Community Association was not a party to the Covenant. The Valleys Planning Council is not a party to this action and apparently has not sought to enforce the Covenant.

[9] The Supplemental Lease Agreement did not refer to the amended order of the
(continued...)

7

Council, including the limitations concerning the surface of the parking lot and the use of the patio listed in (1) and (3) above.

On February 8, 1995, the Board of Appeals revised and ratified the Deputy Zoning Commissioner's orders. The revised order included the addition of the above-listed restrictive terms from the Covenant. It also revised upward the permitted number of parking spaces to 94.

*Oregon's Request to Modify the Zoning Conditions and the 2004 Board of Appeals Order*

In April 2002, Oregon filed three petitions with the Zoning Commissioner, seeking a modification of the 1995 Board of Appeals order for the purpose, among other things, of paving the parking lot and allowing outdoor tented events on the Property.[10] Following a hearing, the Board of Appeals denied the requested modifications in an order dated July 2, 2004. The Board noted that Oregon had not appealed the 1995 Board of Appeals order and that, in the Board's view, "nothing has significantly changed" since the earlier order. The Board cited BCZR §1A03.4.B.3, which provides that "no more than 10% of any lot [so zoned] may be covered by impermeable surfaces (such as structures or pavement)," and opined that the paved portion of the parking lot already exceeded the 10 percent limitation.

---

[9] (...continued)
Deputy Zoning Commissioner, although it included the requirement in that order that the parking lot remain unpaved.

[10] Like the 1994 petitions, those petitions were filed pursuant to BCZR §500.7.

The Board concluded that Oregon was seeking a "second bite of the apple" in attempting to modify the conditions of the 1995 order in a new proceeding.

As a result of the 2004 Board of Appeals order, the prohibition against paving the parking lot remained in effect, as well as the limitations on the number of parking spaces and on the use of outdoor tents.

*Subsequent Changes to the Property*

*The Miracle of the Paved Parking Lot*

A curious thing then happened. The parking lot was paved. The paved parking lot contained 138 marked spaces – 44 spaces in excess of the limit stated in the 1995 Board of Appeals order. Testimony at trial established that the paving was not the work of supernatural forces, but of a contractor well known to County officials whose bill was paid by Oregon. But it remained a mystery as to who had directed the contractor to carry out that work.

According to testimony and documents introduced at trial, the actions leading to the paving of the parking lot began in early 2006, when the County Director of Recreation and Parks, the official in charge of the leasing arrangement with Oregon, allegedly received complaints that the parking lot violated the federal American with Disabilities Act of 1990 ("ADA"),[11] and asked the County's Department of Permits and Development Management

---

[11] Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.* While local governments, such as counties, are required to comply with the federal statute in their

(continued...)

9

for an assessment of the parking lot's compliance. A County employee inspected the lot in March 2006, and concluded that it was "not ADA compliant" due to deficient signage and striping for handicapped spaces and potholes in the access route to the restaurant from those spaces. (He did not conclude that the ADA required paving the entire lot). The Director of Recreation and Parks wrote to Oregon in June 2006 demanding that it correct possible ADA violations by paving the parking lot; he cited the lease provision that required Oregon to comply with all laws, including federal laws – *e.g.*, the ADA.[12] At trial, the parks director testified that, while he had orally recommended the paving contractor to Oregon, the County itself had not hired the contractor for the job and that, if the County had undertaken the paving, it would have had to use a competitive procurement process that he estimated would have taken "six to eight months."

After the paving was completed, the contractor sent his invoice to the parks department, which forwarded it to Oregon for payment under a cover letter stating the County was "satisfied" that the paving brought Oregon into compliance with the ADA, but that the lease was subject to termination if Oregon did not pay the invoice. Oregon's

---

[11] (...continued)
programs and properties, the ADA does not delegate general enforcement authority to those entities.

[12] Although the County as land owner had initiated an administrative process under BCZR §500.7 in 1994 to obtain an administrative ruling on whether the Property was exempt from certain land use restrictions, it apparently chose not to follow that procedure to confirm that its planned action was permitted under the paving restriction in the two Board of Appeals orders.

president testified that it had not directed the contractor to pave the lot, but had merely acceded to the County's demand that it foot the bill. He maintained that the paving was the County's doing and that Oregon was a reluctant, though financially responsible, beneficiary of that action.

Responsibility for directing the contractor to pave the parking lot was left unresolved at trial because, although the Community Association had subpoenaed the contractor to testify on the matter, he had reportedly been hospitalized on the day he was to testify. The Circuit Court denied a request made by the Community Association to hold the record open until the contractor became available.

At trial, the County introduced evidence that the previous surface of the parking lot was also impermeable, that paving the parking lot had no adverse environmental impact and may have eliminated hazardous dust, and that tearing up the paving might have a deleterious impact.[13] Oregon introduced testimony of an experienced real property attorney who opined that, contrary to the statement in the 1995 Board of Appeals order, the paving of the entire lot would not violate the 10 percent limitation in BCZR §1A03.4.B.3 when one considered the entire lot owned by the County (as opposed to the portion leased to Oregon).

---

[13] The County's Director of Sustainability, who had previously served as the State Secretary of the Environment, testified that the previous gravel surface was considered impermeable under State law.

*The Appearance of "Umbrellas" or "Tents"*

During the same period that the lot was paved, objects variously described in the record as "tents" or "canopies" (by the Community Association) or "umbrellas" (by Oregon) appeared on the outdoor seating area. In the eyes of the Community Association, these objects were prohibited by the 1995 Board of Appeals order and by the 1994 Supplemental Lease Agreement. Oregon described them as large umbrellas permitted under those documents.

The Community Association requested that the County require Oregon to correct the alleged violations of the Board of Appeals orders and Supplemental Lease Agreement that resulted from the paving of the parking lot, the increase in the number of parking spaces, and the appearance of what it believed to be tents or canopies on the patio. In February 2007, the County Attorney indicated that his office would review the alleged violations. When the County Attorney ultimately informed the Community Association in the summer of 2008 that the County would not take any action, the Community Association instituted the current litigation.

## The Current Litigation

*The Complaint and Counterclaim*

In August 2008, the Community Association filed a complaint in the Circuit Court for Baltimore County against the County and Oregon.[14]  The first three counts of the complaint asked the court to issue writs of mandamus ordering the County to enforce limitations on the paved surface area of the parking lot, the number and location of parking spaces, and the use of the Property for outdoor events.  The complaint identified the basis for such enforcement action as the February 1995 and July 2004 orders of the Board of Appeals, the Supplemental Lease Agreement, and the County Charter, County Code, and zoning regulations, including the impervious surface limitation in BCZR §1A03.4.B.3.

The fourth and final count of the complaint was brought under the Maryland Uniform Declaratory Judgments Act, Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §3-401 *et seq.* and included a list of five desired declarations, one request for injunctive relief, and a general prayer for "other" relief.[15]  In that count, the Community Association

---

[14] An amended complaint was filed in November 2008.  It added the second individual plaintiff and changed the numbering of several paragraphs, but was otherwise identical to the original complaint.  The second individual plaintiff withdrew from the case during the appeal.  For simplicity, later references to the "complaint" in this opinion include the amended complaint.

[15] The Community Association requested declarations that:

> A.      ... Oregon has violated and shall refrain from further violating (i) the terms of the February 1995 and July 2004 orders of the Board of Appeals[;] (ii) the terms of the Lease Agreement and

(continued...)

13

asked the court to conclude that the ADA did not require paving of the entire parking lot and

that Oregon had violated the Board of Appeals orders, its lease with the County, and the 10

---

[15] (...continued)
Supplemental Lease Agreement; and (iii) the impervious surface limitation in 1A03.4.B.3 of the Zoning Regulations;

B.        ... the County has failed to comply with its duties under the County Code and the County Charter by (i) failing to enforce the terms of the February 1995 and July 2004 orders entered by the Board of Appeals; (ii) failing to enforce the terms of the Supplemental Lease Agreement; (iii) failing to enforce the impervious surface limitations in section 1A03.4.B.3 of the Zoning Regulations;

C.        ... the terms of the February 1995 and July 2004 orders of the Board of Appeals are fully enforceable and shall be enforced by the County, including the terms of those orders providing that: (i) catering and the hosting of weddings or outdoor events at the Oregon Grille is prohibited; (ii) the parking lot at the Oregon Grille shall remain a non-paved surface such as stone or similar permeable surface; and (iii) all parking at the Oregon Grille shall be contained within the area leased from the County;

D.        ... the terms of the Lease Agreement and Supplemental Lease Agreement are fully enforceable and shall be enforced by the County, including the terms providing that: (i) the outdoor dining areas at the Oregon Grille shall be used only for dining or pre-dinner cocktails so long as patrons are subsequently served dinner; (ii) catering and the hosting of weddings or outdoor events at the Oregon Grille is prohibited; (iii) the parking lot at the Oregon Grille shall remain a non-paved surface such as stone or similar permeable surface; and (iv) the Property shall 'fully comply with all federal and state laws, county ordinances, and regulations of the public authority,' including but not limited to the impervious surface limitations in section 1A03.4.B.3 of the County's Zoning Regulations;

E.        ... the Americans with Disabilities Act does not require that the entire parking lot at the Property be paved;

14

percent impervious surface limitation in the BCZR. In other respects, that count replicated the mandamus counts in requesting a declaration that the County was obligated under the County Charter and County Code to enforce restrictions on the parking lot and outdoor dining set forth in the Board of Appeals orders, the lease agreement, and zoning regulations and that those provisions were "fully enforceable." The fourth count of the complaint also asked the court to require Oregon to remove all paving from the parking area of the property that is not required to be paved under the ADA. Like the first three counts, the fourth count ended with a request that the court grant "such other and further relief that the nature of this cause requires."

In April 2010, Oregon filed a counterclaim seeking a declaratory judgment permitting it to host private parties and other outdoor events at the Property. In support of its effort to lift those limitations, Oregon cited "changed circumstances" in the area as a result of increased activity at Oregon Ridge Park and a local country club, as well as the County's construction of an agricultural resource center nearby.

*The Circuit Court Rulings*

The parties filed cross motions for summary judgment. On August 20, 2010, the Circuit Court, in a memorandum opinion, ruled in favor of Oregon and the County as to the claims for mandamus and directed that judgment be entered in their favor on the first three counts of the complaint. The court reasoned that mandamus relief against a public official is available only when the official's duty is imperative or ministerial and not when the duty

15

calls for the exercise of discretion or judgment by the public official. It concluded that the County's enforcement authority under the various provisions relied upon by the Community Association was discretionary; accordingly, mandamus relief was not available to direct the exercise of that discretion. The court ruled in favor of the Community Association as to Oregon's counterclaim for declaratory relief on the ground that, in seeking a change in limitations based on changed circumstances, Oregon had not exhausted its administrative remedies.[16] Finally, the court found that the Community Association's claims for declaratory relief in the fourth count of the complaint could depend on the resolution of certain disputed facts and denied summary judgment as to that count.

The Circuit Court conducted a bench trial on September 22-24, 2010, on the questions of whether the objects that Oregon had constructed were umbrellas, whether the ADA required the paving of the entire lot,[17] and whether the paving violated the 10 percent limitation on impervious surface in the BCZR. Much of the testimony at trial concerned the circumstances surrounding the paving of the parking lot, whether the previous surface of the lot was in fact permeable, and whether the ADA required paving of the entire lot – *i.e.*, was the paving "otherwise required by law" and therefore permissible under the Board of Appeals orders and Supplemental Lease Agreement. At the conclusion of the trial, the court

---

[16] The ruling on Oregon's counterclaim is not before us in this appeal.

[17] The Community Association asserted that, even if the existing parking lot violated the ADA in some way, the violations were readily remedied without paving the entire parking lot.

expressed the view that the Community Association may have failed to exhaust its administrative remedies, but decided to address the merits of the claims for declaratory relief.

The court found, as a factual matter, that the objects on the patio were "very large umbrellas" rather than tents or canopies and therefore did not violate either the Board of Appeals orders or the Supplemental Lease Agreement. The court also found that there was no evidence that the demised premises of the Property was a "lot" for purposes of the impervious surface limitation in the zoning regulations and therefore held that the paving of the entire parking lot did not violate the impervious surface limitation in the zoning regulations.[18]

On the other hand, the court found that the paving of the parking lot and the number of parking spaces added to the lot violated the orders of the Board of Appeals. The court also concluded that the paving of the entire lot was neither required by the ADA nor justified by liability concerns. Nonetheless, the court ruled in favor of Oregon and the County, concluding that declaratory relief could not be granted because a declaratory judgment would not terminate the uncertainty or controversy giving rise to the action.

The court noted that the Maryland Uniform Declaratory Judgments Act provides that a court may award declaratory relief "if it will serve to terminate the uncertainty or controversy giving rise to the proceeding." CJ §3-409(a). The court concluded that it lacked

---

[18] The court reasoned that the 10 percent limitation was to be computed with respect to the entire property owned by the County, including the rest of Oregon Ridge Park, and not just the 2.63 acres leased to Oregon.

17

the authority to issue an injunction directing Oregon or the County to "tear up the parking lot" as part of a declaratory judgment proceeding. In addition, the court noted that the complaint requested that Oregon, not the County, be ordered to remove paving from the parking lot and questioned whether a request for injunctive relief could properly be part of a declaratory judgment count. The court stated that it could "not find any basis on this record to order [Oregon] to tear up the parking lot."

*The Appeal*

The Community Association appealed. The Court of Special Appeals affirmed the judgments of the Circuit Court in a reported opinion. 203 Md. App. 425, 38 A.3d 493 (2012). The intermediate appellate court held that the Community Association was required to exhaust administrative remedies by filing a petition with the Zoning Commissioner under BCZR §500.6 and §500.7 before seeking mandamus or declaratory relief in court. 203 Md. App. at 444-49. Although that rationale provided a sufficient basis for affirming the judgments of the Circuit Court, the Court of Special Appeals nevertheless went on to discuss the appropriateness of mandamus and declaratory relief – the bases on which the Circuit Court had ruled against the Community Association.

With respect to mandamus, the Court of Special Appeals held that, while the Supplemental Lease Agreement did not require the County to take any particular enforcement action against the lessee, the County Code and County Charter imposed a non-discretionary duty on County officials to enforce the orders of the Board of Appeals. The court appeared

18

to accept that the County had discretion to choose among the "methods of enforcement," but held that the County was obligated to take "some enforcement action." 203 Md. App. at 438-44. With respect to the claim for declaratory relief, the intermediate appellate court agreed with the trial court that a declaratory judgment would not resolve the controversy and further held that the Community Association had not adequately pled or proven a claim for injunctive relief ancillary to a declaratory judgment. *Id*. at 450-51.

We subsequently granted the Community Association's petition for certiorari and Oregon's conditional cross-petition to consider whether mandamus and declaratory relief are available in these circumstances, and whether the Community Association must first pursue an administrative remedy as a prerequisite to seeking such relief from the courts.

## Discussion

This appeal raises three legal issues[19] for us to resolve:

1.      Exhaustion of Administrative Remedies:  Was the Community Association required to pursue an administrative remedy prior to seeking either mandamus or declaratory relief?

---

[19] As is sometimes the case in appellate litigation, the parties jockey for advantage in phrasing the questions to be decided by the court. The Community Association listed five questions in its petition for certiorari and has expanded that number to eight in its opening brief. The County asserts that only three questions are at issue. And Oregon identifies two questions related to the Community Association's petition and three related to its cross-petition. Without attempting to referee this debate over the contours of the playing field, we believe that the three questions listed in the text of this opinion fairly summarize the issues raised in the petition and cross-petition that we may reasonably decide.

19

2.      Mandamus:  Did the Circuit Court correctly decide that a writ of mandamus was not available to compel the County, either as enforcer of local zoning regulations or as landlord and party to the Supplemental Lease Agreement, to take the actions desired by the Community Association?

3.      Declaratory Judgment:  Did the Circuit Court have authority to issue a declaratory judgment in these circumstances?

*Standard of Review*

Whether a plaintiff must exhaust administrative remedies prior to bringing suit – as the Court of Special Appeals held here – is a legal issue on which no deference is due to the lower court and which an appellate court may address even if a lower court did not. *Forster v. Office of the Public Defender*, 426 Md. 565, 580, 45 A.3d 180 (2012).

When a circuit court grants summary judgment – as here on the mandamus counts of the complaint – its decision also turns on its analysis of a question of law, not the resolution of disputed facts.  Accordingly, when this Court reviews such a decision – or the intermediate appellate court's reversal of such a decision – it does not accord the lower courts' decisions any special deference. *Mathews v. Cassidy - Turley Maryland, Inc.*, 435 Md.584, 598, 80 A.3d 269 (2013).  The legal question here has to do with whether the County Charter and County Code, among other provisions, impose a non-discretionary duty on County officials with regard to enforcement of certain provisions of the Board of Appeals' orders and Supplemental Lease Agreement.

When a circuit court conducts a bench trial – as was done here on the declaratory judgment count of the complaint – an appellate court reviews the case on both the law and the evidence. Maryland Rule 8-131(c). The trial court's evaluation of the evidence is reviewed under a clearly erroneous standard. *Id.* A court's decision to grant or deny declaratory relief is generally assessed under an "abuse of discretion" standard. *Converge Services Group, LLC v. Curran*, 383 Md. 462, 477, 860 A.2d 871 (2004). However, a legal interpretation, such as the court's construction of the Declaratory Judgments Act in this case, is reviewed without according the circuit court any special deference.

*Exhaustion of Administrative Remedies*

This Court has categorized administrative remedies – in relation to a judicial remedy – as exclusive, primary, or concurrent. *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60-61, 706 A.2d 1060 (1998). When the administrative remedy is exclusive, "there simply is no alternative cause of action..." *Id.* When the remedy is primary, " a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.* Finally, when the remedies are concurrent, "the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy." *Id.*

In sum, when there is a primary or exclusive administrative remedy available to the complaining party, that remedy must be exhausted before the party can resort to the courts.

21

*Renaissance Centro Columbia, LLC v. Broida,* 421 Md. 474, 483-85, 27 A.3d 143 (2011).

As this Court has previously noted, when a chartered county, such as Baltimore County, has established a Board of Appeals under the Express Powers Act, the appeal to that board provided for parties "aggrieved by a decision of a local zoning official" is at least primary, and may be exclusive. *Maryland Reclamation Associates, Inc. v. Harford County*, 382 Md. 348, 364-65 & n.6, 855 A.2d 351 (2004). Similarly, the Maryland Uniform Declaratory Judgments Act provides that "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of [a declaratory judgment]." CJ §3-409(b). On the other hand, the existence of a "concurrent common-law, equitable, or extraordinary legal remedy" does not preclude a party from seeking declaratory relief. CJ §3-409(c).[20]

This Court has cited several reasons for the requirement that a party initially pursue an available administrative remedy:

- The decision may involve an exercise of discretion accorded to the agency;

- Determination of the issue may require the special expertise of the agency;

- Judicial intervention may impede an efficient administrative process;

- The courts might decide issues that could be resolved at the agency level.

---

[20] The General Assembly added this language to the Maryland Uniform Declaratory Judgments Act to make clear that a party was not precluded from seeking declaratory relief simply because the party had the option of pursuing another remedy. *See* Chapter 724, Laws of Maryland 1945.

22

*Arroyo v. Board of Education of Howard County*, 381 Md. 646, 661-62, 851 A.2d 576 (2004)

(*quoting Soley v. State Commission on Human Relations*, 277 Md. 521, 526, 356 A.2d 254

(1976)).

In holding that the Community Association failed to exhaust available administrative

remedies, the Court of Special Appeals cited two provisions of the BCZR that authorize the

Zoning Commissioner[21] to hold hearings:  BCZR §500.6 and BCZR §500.7.[22]  Neither of

those provisions explicitly refers to the enforcement of an order of the Board of Appeals,

perhaps because such an order may itself be the end result of a proceeding commenced under

BCZR §500.6 or §500.7.  As noted earlier, the two Board of Appeals orders at issue in this

case were each the final result of proceedings initiated by petitions filed pursuant to BCZR

---

[21] As a result of County legislation subsequent to the commencement of this case, the powers and responsibilities of the Zoning Commissioner under these provisions were transferred to the County Office of Administrative Hearings.

[22] Section 500.6 reads as follows:

§500.6 Authority to conduct hearings.

In addition to his aforesaid powers, the Zoning Commissioner shall have the power, upon notice to the parties in interest, to conduct hearings involving any violation or alleged violation or noncompliance with any zoning regulations, or the proper interpretation thereof, and to pass his order thereon, subject to the right of appeal to the County Board of Appeals as hereinafter provided.

Section 500.7 is set forth in footnote 5 above.

§500.7, in which neither of the parties restricted by those orders – Oregon and the County (as landlord) – sought judicial review.

Under the theory espoused by the County and Oregon, a final administrative order – for which the owner or tenant of the property subject to restrictions under that order had not sought judicial review – would be enforceable only by commencing another administrative proceeding under the same provision as the final administrative order sought to be enforced.[23] Such a proceeding, even if favorable to those seeking to uphold the restrictions, would result in another final order of the Board of Appeals. If the owner or tenant did not seek judicial review, but simply failed to comply with that order, a party seeking to enforce the order would have to initiate yet another administrative proceeding. This would trap an aggrieved

---

[23] Oregon also argues that the Community Association should have pursued what it characterizes as a "second administrative remedy" by requesting that various County departments enforce the Board of Appeals orders under various provisions of the County Code, such as BCC §32-3-607.

While that title of Article 32 of the code sets forth some of the responsibilities and powers of that Department in enforcing the local zoning laws, and therefore may be relevant to the mandamus argument, it does not itself provide an administrative procedure that must be invoked by a private citizen before proceeding to court. This title deals primarily with procedure for the County to impose a civil monetary penalty on a party that violates zoning regulations and provides for the County Attorney to prosecute unpaid violations in the courts. With respect to enforcement by the County, it is explicitly "in addition to any other remedy allowed by law to the county for this purpose." §32-3-605(2). It does not purport to set forth a procedure for private parties to enforce compliance with a zoning order. Indeed, §32-3-607 specifically provides that, "in addition to all other remedies provided by law, ... any person whose property is affected by any violation ... of this title or the zoning regulations and restrictions adopted under this title" may seek injunctive relief in court. *Compare* Anne Arundel County Code, §18-17-205 (creating private cause of action to enforce zoning code contingent on notice to county and county decision not to pursue enforcement remedies).

party in an endless loop of administrative proceedings. Exhausting perhaps, but not the underlying purpose of the requirement that a party exhaust administrative remedies as a prerequisite to seeking relief in court.[24]

In this case, there is no question that the parking lot was paved and that the Board of Appeals orders forbade paving the lot "unless otherwise required by law." The decision as to the alleged violation of the Board of Appeals orders turned on whether the paving was otherwise required by law and the only "other law" proffered by the County or Oregon was the ADA – not a statute within the peculiar expertise of County zoning officials. Thus, resort to the courts did not interfere with an efficient administrative process on a matter within the expertise of the agency. In these circumstances, the Community Association was not required to initiate another proceeding under BCZR §500.6 and §500.6 to seek enforcement of the final administrative orders issued as a result of the first two proceedings.[25]

---

[24] It is true that the Petitioners did not initiate the prior administrative proceedings. The County brought the proceeding under BCZR §500.7 that resulted in the 1995 Board of Appeals order and Oregon brought the proceeding under BCZR §500.7 that resulted in the 2004 order – a proceeding initiated not to enforce the 1995 order, but to overturn it or to modify it. It is not self-evident why the Community Association must now bring a third proceeding under BCZR §500.7 to obtain a third Board of Appeals order with the same substance as the first two as a prerequisite to enforcing those orders. Revisiting the administrative process might have been appropriate if the County or Oregon, prior to the paving, sought modification of the Board of Appeals orders to permit the paving – or an interpretation from the Board that paving the entire lot was permitted by the proviso to the Board's order.

[25] We agree with the Court of Special Appeals that, in the absence of the Board of Appeals orders, the Community Association would be required to pursue administrative remedies to enforce zoning regulations applicable to the Property such as the impervious surface limitation of BCZR §1A03.4.B.3.

25

*Mandamus*

In the first three counts of the complaint, the Community Association sought a writ of mandamus against the County. It is well established that common law mandamus is "an extraordinary remedy" that "is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right. The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment." *Goodwich v. Nolan*, 343 Md. 130, 145, 680 A.2d 1040 (1996) (internal quotations and citations omitted); *see also Talbot County v. Miles Point Property, LLC,* 415 Md. 372, 396-97, 2 A.3d 344 (2010).[26] In other words, the duty of the public official must be "purely ministerial" or the official's obligation to act must be "clear and unequivocal." *Brack v. Wells*, 184 Md. 86, 89-90, 40 A.2d 319 (1944); *see also Harvey v. Marshall*, 389 Md. 243, 276 n.18, 884 A.2d 1171 (2005) ("the substance of a petition for mandamus involves two complementary requirements: 1) a clear right on the part of the petitioner to the relief requested, and 2) a clear duty on the part

---

[26] Common law mandamus is to be distinguished from administrative mandamus, a remedy that allows for judicial review of certain quasi-judicial administrative decisions when judicial review is not otherwise expressly provided by law. Maryland Rule 7-401 *et seq.*; *see also Town of LaPlata v. Faison-Rosewick LLC,* 434 Md. 496, 511, 76 A.3d 1001 (2013) (administrative mandamus not available to review town manager's decision because town manager was not adjudicating a dispute); *Talbot County v. Miles Point Property, LLC,* 415 Md. 372, 394-96, 2 A.3d 344 (2010). The Community Association has not invoked administrative mandamus in this action.

of the administrative agency to perform the particular duty implicated.").  In the past, this Court has indicated that, in rare cases, a court may review a discretionary act of a public official when there is "both a lack of an available procedure for obtaining review and an allegation that the action complained of is illegal, arbitrary, capricious or unreasonable." *Goodwich,* 343 Md. at 146; *see also Brack*, 184 Md. at 90-91 (mandamus not available if there is an adequate legal remedy).[27]

The Circuit Court concluded that all three mandamus counts of the complaint related to duties on which County officials enjoyed discretion as to what, if any, action to take. Accordingly, it held that mandamus relief was unavailable. The Court of Special Appeals disagreed.  For the reasons that follow, we agree with the Circuit Court.

The Community Association differentiated its three mandamus counts according to the source of the duty allegedly owed by County officials: the County Charter and County Code (Count I); the orders of the Board of Appeals (Count II); and the Supplemental Lease Agreement (Count III).  It is perhaps more useful to analyze the appropriateness of mandamus in terms of the roles that the County government played in this case and the powers and duties that pertain to those roles.  In particular, the Community Association

---

[27] Judicial review in such circumstances must be circumspect as a judicial directive to a public official of another branch of government charged with discretionary decisions can raise issues relating to separation of powers. *Cf. Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 380 (2d Cir. 1973) ("substitution of a court's decision to compel prosecution for the [prosecutor's] decision not to prosecute, even upon an abuse of discretion standard of review and even if limited to directing that a prosecution be undertaken in good faith ... would be unwise").

sought mandamus to compel the County to act in two capacities: (1) regulator – *i.e.*, the enforcer under various County laws of local land use regulation; and (2) a landlord with contract remedies under its lease with its tenant.

*County as Regulator with Statutory Enforcement Powers*

The Baltimore County Code ("BCC") establishes the duties of each County department with respect to land use regulation, zoning, and related matters.[28] The Department of Permits, Approvals, and Inspections[29] administers and enforces laws and regulations associated with zoning. BCC §3-2-1103. The Director of Permits, Approvals, and Inspections is charged with interpreting and enforcing the BCZR. BCC §32-3-102. Similarly, under the County Code, the Department of Environmental Protection and Sustainability[30] is to "administer and enforce environmental laws," and is responsible for enforcement of the state laws and regulations concerning the environment that are delegated to the Department by state law, regulation, or directive. BCC §3-2-604.

To carry out those duties, the County – and the Department of Permits, Approvals and Inspections in particular – also has a variety of tools at its disposal to resolve zoning

---

[28] As a charter county, Baltimore County has authority to regulate land use and zoning and to enforce those regulations in civil and administrative proceedings. *See* Maryland Code, Local Government Article, §10-324; Land Use Article, §9-301 *et seq.*, §11-201 *et seq.*

[29] That department was previously known as the Department of Permits and Development Management until it was renamed in a 2010 reorganization of the County government.

[30] That department was previously known as the Department of Environmental Protection and Resource Management until it was renamed in the 2010 reorganization.

violations. The Director of that Department "may enforce and seek correction of a violation as provided in [the Code enforcement title of the County Code]." BCC §3-6-201. For example, if there appears to be a violation of the zoning laws, the Department may issue a "correction notice" or a citation. BCC §§3-6-203, 3-6-205. Under the zoning title of the County Code, the Department may file for an injunction or equitable relief requesting a court to (1) enjoin a violation, (2) require the restoration of a property, to the extent possible, to its condition before the violation, including removal of the source of the violation, and (3) order other relief as may be appropriate to remedy a violation. BCC §32-3-607[31]; BCC §3-6-202. In addition, the Department of Permits, Approvals and Inspections may impose civil fines. BCC §33-2-602. It may also seek criminal penalties. BCC §33-2-606. Finally, BCC §33-2-607 authorizes the Department to seek an injunction against a violation and the return of the property to its condition before the violation. Thus, in the County's capacity as land use regulator, County officials have the authority to take the actions sought by the Community Association. The question is whether a court may compel County officials to take such enforcement action by means of a writ of mandamus.

In our view, it may not. As the Circuit Court pointed out in its ruling on summary judgment, "while the County is charged generally with the responsibility to enforce land use and zoning requirements, it clearly does not pursue enforcement on every arguable violation.

---

[31] This provision also authorizes "any person whose property is affected by any violation" to seek injunctive relief in court.

29

There are a myriad of discretionary decisions made in determining how to employ limited resources. It is well within the discretion of County officials to pick and choose among the categories of violations, or to prioritize certain types or areas of enforcement. The County may also legitimately decide not to pursue enforcement in matters where they believe, perhaps even wrongly, that they may not prevail. The enforcement arena is simply littered with decisions that are discretionary."

While mandamus may be available to compel county officials to carry out certain zoning-related ministerial duties, such as the issuance of a particular type of permit when all requirements are met, a decision to deploy the county's resources to take particular enforcement actions is a discretionary – not ministerial – duty.[32] This discretion is comparable in some instances to that of a State's Attorney who must decide which criminal cases to prosecute. *Brack*, 184 Md. at 90. Discretion is sometimes exercised by a decision not to initiate a case. Indeed, many prosecutors will attest that the most difficult, but wisest decision, that a prosecutor makes is to forgo prosecution in a case when for some reason it

---

[32] Courts in other jurisdictions have sometimes held that a private party may invoke mandamus to enforce a zoning restriction when local officials have a "clear duty" to take a particular action. *See* Annotation, Remedies to Compel Municipal Officials to Enforce Zoning Regulations, 35 ALR2d 1135 §2 (2014). Other courts have viewed mandamus as interfering with the judgment or discretion of zoning enforcement officials, particularly when another remedy is available to the plaintiff. *Id.*; Jacqueline P. Smith & James C. Smith, *Neighboring Property Owners* §8.7 (1988 & 2014 Supp.). As noted above, in this case, the County Code provides another remedy as it authorizes a private party to seek injunctive relief for violation of zoning regulations. *See* footnote 23 above.

is not in the interest of justice, even though it would be legally permissible to mount a prosecution.[33]

The Community Association latches on to the use of the verb "shall" in a number of provisions of the County Code that identify the agency responsible for enforcing certain categories of laws[34] and argues that this verbiage mandates enforcement action in each and every possible case – an argument to some extent accepted by the intermediate appellate court. But such provisions simply identify the duties and responsibilities of the agency. They do not dictate enforcement action in every case. The use of the word "shall" in those contexts is no different than its use in the statutory provision that describes the duties of a State's Attorney. *See* Maryland Code, Criminal Procedure Article, §15-102 ("... a State's attorney shall ... prosecute ... all cases in which the State may be interested").

There are any number of possible reasons, all perfectly within the discretion of the County, for not pursuing the particular enforcement mechanisms that would most please the

---

[33] When a public official has discretion in a particular matter but refuses to exercise discretion, mandamus may be available to require the official to exercise that discretion – *i.e.*, to make a decision – even if the ultimate decision of the public official is to take no affirmative action in the particular matter. *See, e.g.,* 4 Rathkopf's Law of Zoning and Planning §64.7 (4th ed. 2014). In its opinion in this case, the Court of Special Appeals, although it conceded that County officials were not required to take any particular enforcement action, held that the County was required to pursue one of the potential enforcement mechanisms available, apparently eliminating from the menu of options a decision to decline enforcement action. This ignores the possibility that the exercise of discretion sometimes properly and reasonably results in a decision to take no action at all, even though some action would be legally permissible.

[34] *E.g.,* BCC §3-2-1103 (the Department of Permits, Approvals, and Inspections "shall administer and enforce ... [a]ll laws, maps, and regulations relating to zoning").

31

Community Association. Whether to prosecute an enforcement action necessarily involves consideration of potential outcomes, the odds of success, the cost to the taxpayers, and the likely benefit to the community and to County residents generally. The choice is therefore inherently discretionary. Even assuming, for purposes of argument, that the County agrees that a violation has occurred, the County may decide not to expend its limited resources litigating a particular matter. Or it may ascribe greater priority to competing demands for deployment of its resources. Such administrative and financial factors are generally appropriate in a determination of how to exercise discretion. *Harvey v. Marshall*, 389 Md. 243, 310-12, 884 A.2d 1171 (2005).

*County as Landlord with Contract Rights under Lease*

As land owner of the Property, the County was subject to the restrictions in the Board of Appeals orders. It had incorporated those restrictions in its Supplemental Lease Agreement with Oregon. Accordingly, in the Supplemental Lease Agreement, Oregon agreed to maintain the parking lot as a "non-paved surface such as stone or similar permeable surface, unless otherwise required by law." In the mandamus counts, the Community Association sought to compel the County to enforce that provision of the Supplemental Lease Agreement against Oregon.[35]

---

[35] This is distinct from the County's obligation as the landowner to comply with the Board of Appeals orders itself.

The Community Association has not identified any law that creates a ministerial duty on the part of the County Department of Recreation and Parks to pursue every contract remedy that may be available to the department under a County contract with a third party. Like any party to a contract, County officials charged with administration of a contract may properly consider a myriad of factors in determining whether the other party has breached the contract and, if so, what to do about it. Again, this is not an appropriate circumstance for common law mandamus.

*Declaratory Judgment*

The fourth count of the complaint requested declaratory relief. Under the Maryland Uniform Declaratory Judgments Act, a circuit court may grant such relief "if it will serve to terminate the uncertainty or controversy giving rise to the proceeding," and if:

> (1) An actual controversy exists between contending parties;
>
> (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
>
> (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

CJ §3-409(a). A court that issues a declaratory judgment may grant further relief "if necessary or proper." CJ §3-412. The Act is a "remedial" statute designed to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CJ §3-402. It is to be "liberally construed and administered." *Id.*

33

On appeal, the Community Association does not challenge the Circuit Court's factual finding that the objects on the patio were umbrellas permitted under the Board of Appeals orders and Supplemental Lease Agreement. Nor does it contest the trial court's conclusion that there was no showing that the Property was a "lot" for purposes of the 10 percent limitation on impervious surface in the zoning regulations. The Community Association does not, of course, contest the Circuit Court's conclusion that the paving of the entire parking lot was not required by the ADA and that it violated the Board of Appeals orders. Rather, the issue is whether the trial court, after reaching that conclusion, properly construed the Declaratory Judgments Act in denying declaratory relief.[36]

With respect to the paving of the parking lot, the fourth count of the complaint sought a declaration (1) that the paving violated the Board of Appeals orders;[37] (2) that the ADA does not require that the entire parking lot be paved; and (3) that the parking lot is to be maintained as a permeable surface. To implement the third element, the complaint asked that

_____

[36] We need not discuss those prayers for relief in the fourth count of the complaint that duplicate the requests for mandamus relief – *i.e.*, that the court declare that the County has a "duty" to enforce certain provisions and "shall enforce" those provisions. In addition, we agree with the Court of Special Appeals that, in the circumstances of this case, a general declaration that the Board of Appeals orders and the Supplemental Lease Agreement are "enforceable" would be meaningless. 203 Md. App. at 450.

[37] The complaint also sought declarations that the paving violated the Supplemental Lease Agreement and the impervious surface limitation of the zoning regulations. As indicated in the text, the court held that the Community Association lacked standing to enforce provisions of the Supplemental Lease Agreement between the County and Oregon and found that there was insufficient evidence of a violation of the impervious surface limitation.

34

Oregon be ordered to remove the paving from any portion not required to be paved by the ADA.

In its oral remarks at the end of the trial, the Circuit Court concluded that declaratory judgment would not serve to terminate the uncertainty or controversy giving rise to the proceeding. Despite its conclusion that the paving of the entire parking lot was not compelled by the ADA and had violated the Board of Appeals orders, the court felt that it was constrained by CJ §3-409[38] from providing any relief because a "declaratory judgment by itself" wold not terminate the uncertainty or controversy, and that injunctive relief would not be "properly a part of [a] declaratory judgment." It focused on the fact that the only specific injunctive relief requested by the Community Association in the fourth count of the

---

[38] That statute provides, in pertinent part:

> (a) Except [for cases involving divorce or annulment], a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
>
> (1) An actual controversy exists between contending parties;
>
> (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
>
> (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

CJ §3-409(a).

complaint was for an order directing Oregon – as opposed to the County – to remove some of the paving from the parking lot while the evidence at trial was ambiguous as to the extent of Oregon's responsibility for the paving. The court apparently viewed the general prayer in the fourth count of the complaint "for such other and further relief that the nature of the cause requires" as too vague to constitute a request for more specific relief to implement any declaration it might make.[39]

In our view, the Circuit Court applied too strict a test. The issuance of a declaratory judgment does not depend on the specificity of a party's request for ancillary relief to enforce the declaration. CJ §3-403(a) ("a court ... may declare rights, status, and other legal relations whether or not further relief is or could be claimed."). Under the Declaratory Judgments Act, injunctive relief may be sought to implement a declaratory judgment in either the same action or a subsequent action. *See Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 458-59, 952 A.2d 275 (2008). Indeed, CJ §3-412 contemplates the filing of a petition after the declaratory judgment in which a prevailing party identifies the ancillary relief believed necessary to implement a declaratory judgment and a proceeding in which the scope of such relief is determined.[40] *See Bankers and Shippers Ins. Co. v. Electro Enterprises, Inc.*, 287

---

[39] The Court of Special Appeals also adopted this position. 203 Md. App. at 508-9.

[40] The statute provides:

> (a) Further relief based on a declaratory judgment or decree may be granted if necessary or proper.

(continued...)

36

Md. 641, 653, 415 A.2d 278 (1980).

The Uniform Declaratory Judgments Act was developed by the National Conference

of the Commissioners on Uniform State Laws in the early 1920s.[41] *See* E.M. Borchard, *The*

*Uniform Act on Declaratory Judgments*, 34 Harv. L. Rev. 697 (1921). Maryland adopted the

Uniform Act without significant change in 1939,[42] and the Maryland version is unchanged,

except for minor provisions not pertinent to this case. The drafters of the Uniform Act made

a deliberate decision not to require a plaintiff to identify in a complaint for declaratory relief

the specific ancillary relief that might be necessary to implement a declaratory ruling. *Id*. at

---

[40] (...continued)

(b)  An application for further relief shall be by petition to a court having jurisdiction to grant the relief.

(c)  If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted.

CJ §3-412.

[41] The declaratory judgment was not a feature of the English common law as of 1776 that was adopted as the foundation of Maryland law, *see* Article 5 of the Maryland Declaration of Rights; it was imported into England from Scottish law in the mid-19th century. *See Developments in the Law - Declaratory Judgments*, 62 Harv. L. Rev. 787, 790-91 (1949). The declaratory judgment became part of federal law in the United States in 1934. *See* 28 U.S.C. §§2201, 2202. The Uniform Declaratory Judgments Act has been adopted by nearly every state. *See* 12 Uniform Laws Annotated (2009) at 331-32.

[42] Chapter 294, Laws of Maryland 1939. In 1945, after the Court of Appeals had adopted a narrow view of the availability of the remedy, the Legislature revised the statute to make clear that a party could seek a declaratory judgment even if other remedies were available to the party. *See* Chapter 724, Preamble, Laws of Maryland 1945.

712-13. In particular, the drafters explicitly chose not to follow the model of a then-existing New York statute that included such a requirement. *Id*. As the author of an important 20th century treatise on declaratory judgments explained, although it might be helpful to include a prayer for coercive relief, such as an injunction, in a complaint for declaratory relief in a particular case, "it is not apparent why the plaintiff should be compelled to .... By determining the legal relations of the parties, injunction or other coercive relief may indeed become unnecessary, for each party will have an authoritative judicial decision of his legal position in the premises." *Id.* Indeed, because the Uniform Act does not require that specific coercive relief necessarily be identified in the complaint, it includes a section providing for the court to order further relief following an order to show cause – a provision included in the Maryland version of the Act. *Id.* at 713; *see* CJ §3-412.[43]

The issuance of a declaratory judgment does not lead ineluctably to ancillary relief, such as an injunction.[44] Moreover, an injunction is an equitable remedy and thus allows for

---

[43] In its brief, Oregon argues that the Circuit Court's conclusion that mandamus was not available against the County – a conclusion with which we agree as indicated earlier in this opinion – necessarily precludes injunctive relief as well. However, Oregon confuses the two of the roles of the County in this case. We have held that the County as code enforcer is not subject to mandamus in this case. Similarly, mandamus was not available against the County as a landlord to compel it to pursue the contract remedies against its tenant. However, in its capacity as owner of the Property, the County itself is subject to the restrictions of the Board of Appeals orders and any injunctive relief that might be awarded to enforce those restrictions.

[44] In some instances, a declaratory judgment may itself eliminate the need for injunctive relief:
    While the most dramatic use of declaratory judgments is
                                                                (continued...)

38

consideration of a variety of factors, including the relative inconvenience or comparative

hardship to the parties. *See, e.g., Beane v. McMullen*, 265 Md. 585, 615-17, 291 A.2d 37

(1972).

The Circuit Court, in stating its legal conclusions following the trial, has already

issued in essence a declaratory ruling, although it did not reduce that decision to the writing

required for a declaratory judgment. Maryland Rule 2-601(a)-(b); *see Bowen v. City of*

*Annapolis*, 402 Md. 587, 608-9, 937 A.2d 242 (2007); *Salamon v. Progressive Classic*

*Insurance Co.*, 379 Md. 301, 307-8 n.7, 841 A.2d 858 (2004). It may be that, although the

Circuit Court believed that there had been a violation of the Board of Appeals orders, it felt

that the particular ancillary injunctive relief specified in the complaint was not appropriate

or equitable. For example, it may have believed that Oregon, which had received conflicting

directives from the County about paving the parking lot, should not be burdened with

---

[44] (...continued)

> to intervene before harm, declaratory relief may also be available as a useful concurrent remedy, supplying the court with another method of settling claims for harm done. The milder declaratory judgment avoids the necessity of immediately determining the proper kind and degree of coercive relief. It may be phrased in broader terms than a coercive decree, thus avoiding or simplifying later litigation. The declaratory action may also provide a direct and simple means of adjudicating accrued rights where coercive actions would be unnecessarily complex and roundabout.

*Developments in the Law - Declaratory Judgments*, 62 Harv. L. Rev. 787, 789-90 (1949)
(footnotes omitted).

correcting the situation. Or the court may have believed that it would be inequitable to order either Oregon or the County – as the landlord subject to the Board of Appeals orders – to remove the paving if it credited the testimony at trial that the previous surface was also impermeable and that tearing up the paving would have adverse environmental effects.

It does not seem quite right to say that this controversy – or at least significant portions of it – cannot be resolved through a declaratory judgment and ancillary relief. For example, if the Circuit Court were to incorporate its conclusion that the objects that appeared on the patio were "large umbrellas," as opposed to the forbidden canopies, such a judgment would resolve the question whether Oregon had violated the Board of Appeals orders by placing those umbrellas on the patio. Similarly, if the court had concluded that the ADA required paving of the entire parking lot, that would have resolved the issue of whether the paving was "otherwise required by law" and therefore permissible under the Board of Appeals orders.

## Conclusion

For the reasons explained above, we hold:

1 - The Community Association need not initiate an administrative proceeding under BCZR §500.7 in order to pursue enforcement of the Board of Appeals orders under the circumstances of this case.

2 - The Circuit Court properly granted summary judgment in favor of the County and Oregon with respect to the mandamus counts of the complaint because mandamus is not

40

available to direct the exercise of the County's discretion in enforcement of the zoning laws or its contractual relationships.

3 - The Circuit Court has authority to issue a declaratory judgment as to whether the Board of Appeals orders were violated by the paving of the parking lot and, if so, has authority to decide what, if any, ancillary injunctive relief to grant.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SPLIT EQUALLY BETWEEN PETITIONERS AND RESPONDENTS.**